Linda STEVENS, Claimant–Respondent,

v.

CITIZENS MEMORIAL HEALTH-CARE FOUNDATION, Employer–Appellant,

and

Health Care Facilities of Missouri, Insurer–Appellant.

No. 28457.

Missouri Court of Appeals, Southern District, Division Two.

Jan. 30, 2008.

Kevin M. Johnson, Wallace, Saunders, Austin, Brown & Enochs, Chartered, of Overland Park, KS, for appellant.

Jay P. Cummings, Gannaway & Cummings, of Springfield, MO, for respondent.

THEODORE B. SCOTT, Senior Judge.

This appeal arises from a Labor and Industrial Relations Commission ("the Commission") award affirming Citizens Memorial Healthcare Foundation's and Healthcare Facilities of Missouri's (collectively "Citizens") liability for a compensable injury and the payment of additional benefits to Linda Stevens ("Stevens"). Stevens worked for Citizens Memorial Healthcare Foundation as a certified nurse's aid and a registered medication technician. Citizens Memorial Healthcare Foundation is apparently self-insured by Healthcare Facilities of Missouri. On appeal, Citizens asserts that the Commission's order was not based on competent and substantial evidence.

While working in February of 1999, Stevens heard a loud snap in the back of her left knee right before her knee gave way. Stevens was taken to the emergency room for treatment and care on her knee. Stevens was treated by Dr. Marion Wolf ("Dr. Wolf"), an orthopedic surgeon, who eventually conducted an arthroscopic surgery on Steven's left knee and then a total knee joint replacement. Prior to the injury, Stevens testified that she did not have any pain or discomfort in her left knee.

Stevens had arthroscopic surgery done on her knee in April of 1999, and then a full knee replacement in October of 1999. Citizens denied coverage for the first surgery and, because of that denial, Stevens did not ask Citizens to pay for part of the second surgery. Stevens testified that she did not work and believed she was unable to work from the date of injury until the time of her knee replacement surgery. During that time her movement was restricted by the use of a cane or a walker, her feet and legs were swollen, and she did not want to place any weight on the knee.

Dr. Wolf diagnosed Stevens as having chondromalacia and torn cartilage in her left knee. According to Dr. Wolf, chondromalacia is a roughness of the rubbery pad that lines a knee joint and may be a sign of early osteoarthritis. In his deposition testimony, Dr. Wolf stated that Stevens' underlying condition was not caused by the injury, but was aggravated by it. He indicated that Stevens was unable to return to gainful employment from the time of the injury until the time of the knee replacement, and that Stevens would need three months to recover after the surgery where she would not be able to work, and then an additional three months in which she could work part time. Dr. Stevens stated that the life expectancy of the knee prosthetic was around twenty years, and that if Stevens lived beyond that point there was a good chance that she would need further surgery.

In May of 2000, Stevens filed a claim with the Division of Workers' Compensation ("the Division") for workers' compensation stemming from Stevens' knee injury. A hearing was held before a Division administrative law judge ("ALJ") and Stevens was awarded sixty and five-sevenths weeks of temporary total disability at a

rate of $196.23 per week for a total of $11,913.96; twenty-four weeks of permanent partial disability at a rate of $196.23 for a total of $4709.52; and $31,290.77 in unpaid medical expenses. The ALJ also ordered Citizens to provide Stevens with future medical care as is necessary to cure or relieve her from the effects of the injury. The Commission adopted and affirmed the ALJ's award.[1]

■ Where the Commission adopts and affirms the findings of an ALJ, we review the decision adopted by the Commission as adopted by the ALJ. *Carnal v. Pride Cleaners,* 138 S.W.3d 155, 158 (Mo.App. W.D.2004). Our review is governed by Section 287.495,[2] which states that a reviewing court may reverse, remand, or set aside the award upon only upon certain grounds, one of which is "[t]hat there was not sufficient competent evidence in the record to warrant the making of the reward." *Hampton v. Big Boy Steel Erection,* 121 S.W.3d 220, 222 (Mo. banc 2003).

■ For their first point on appeal, Citizens asserts that there was not sufficient competent evidence to support the award of future medical treatment to Stevens. The Missouri Workers' Compensation Act allows for an award of future medical treatment. Section 287.140 provides, in part, that

> [i]n addition to all other compensation, the employee shall receive and the employer shall provide such medical, surgical, chiropractic, and hospital treatment, including nursing, custodial, ambulance and medicines, as may reasonably be required after the injury or disability, to

cure and relieve from the effects of the injury.

■ To receive an award of future medical benefits, a claimant need not show "conclusive evidence" of a need for future medical treatment. *ABB Power T & D Co. v. Kempker,* 236 S.W.3d 43, 52 (Mo. App. W.D.2007). Instead, a claimant need only show a "reasonable probability" that, because of her work-related injury, future medical treatment will be necessary. *Id.* A claimant need not show evidence of the specific nature of the treatment required. *Aldridge v. Southern Missouri Gas Co.,* 131 S.W.3d 876, 883 (Mo.App. S.D.2004).

Dr. Wolf stated that the life expectancy of the knee proximity was around twenty years. He then opined that there was a possibility that Stevens would need further surgery on the knee, stating that it was "probably a 50–50 chance." When pressed further, Dr. Wolf indicated that it was likely that Stevens will have to face another surgery in the future, if she lives long enough. We find that Stevens, through Dr. Wolf's deposition testimony, presented sufficient and competent evidence upon which the Commission could base their award of future medical treatment.

Citizens also argues that Stevens did not distinguish her need for future medical care because Dr. Wolf stated that Stevens' would most likely have to have another surgery on the knee, regardless of whether the injury occurred or not. Dr. Wolf was asked whether Stevens' employment was a factor in causing the possibility for future

---

1. In the ALJ's award, and the award adopted by the Commission, Stevens' injury is described as occurring in her right knee. However, it is clear from the record before us that Stevens' injury occurred to her left knee and not her right. Neither party raises this apparent error on appeal. If, in the future, either party should wish to attempt to correct this apparent error, they may have a remedy in circuit court. *See Blankenship v. Grandy's, Inc.,* 839 S.W.2d 680 (Mo.App. S.D.1992).

2. Unless otherwise noted, all references to statutes are to RSMo (2000).

medical treatment. Dr. Wolf responded as follows:

Well, probably not a great effect on it because, as I said, she had osteoarthritis. So it's likely irrespective of the injury, that she would still have to have a knee joint done at an early age. So then, I think, within a few years' period of time, the thing would have been—or the outcome would have been the same. So I think whether that injury occurred or whether it didn't, it's likely that she would be facing another surgery if she lived long enough.

■■■ For an employer to be responsible for future medical benefits, such care "must flow from the accident, via evidence of a medical causal relationship between the condition and the compensable injury[.]" *Bowers v. Hiland Dairy Co.*, 132 S.W.3d 260, 270 (Mo.App. S.D.2004). While an employer may not be ordered to provide future medical treatment for non-work related injuries, an employer may be ordered to provide for future medical care that will provide treatment for non-work related injuries if evidence establishes to a reasonable degree of medical certainty that the need for treatment is caused by the work injury. *Id.*

Citizens claims that, because Stevens would likely have required future medical treatment irrespective of the injury, Stevens cannot show that any future medical treatment is caused by the injury. The Commission found that Stevens' injury arose out of her employment, and Citizens does not challenge this finding. As such, the question of whether or not Stevens may have needed future treatment even if the injury did not occur is irrelevant to the analysis of whether the future medical care flows from the injury that actually occurred. Simply put, the injury arose out of Stevens' employment, the knee replacement surgery was a necessary treatment of the injury and because of the limited life span of knee prosthetics, future medical treatment is likely to be needed.

Citizens' first point is denied.

■■■ For their second point, Citizens argues that competent and sufficient evidence does not exist to support the Commissions' finding of temporary total disability benefits. The Commission awarded Stevens sixty and five-sevenths weeks of temporary total disability benefits, covering the period of the injury on February 17, 1999, to the date of Stevens' last treatment by Dr. Wolf on April 17, 2000.

■■■ At the time of Stevens' injury, "total disability" was defined as an "inability to return to any employment and not merely [the] inability to return to the employment in which the employee was engaged at the time of the accident." Section 287.020. The purpose of a temporary, total disability award is to cover the employee's healing period. *Birdsong v. Waste Management*, 147 S.W.3d 132, 140 (Mo.App. S.D.2004). Temporary total disability awards should cover the period of time from the accident until the employee can either find employment or has reached maximum medical recovery. *Id.* "When further medical progress is not expected, a temporary award is not warranted." *Boyles v. USA Rebar Placement, Inc.*, 26 S.W.3d 418, 424 (Mo.App. W.D.2000) (overruled on other grounds). "A claimant is capable of forming an opinion as to whether she is able to work, and her testimony alone is sufficient evidence on which to base an award of temporary total disability." *Landman v. Ice Cream Specialties, Inc.*, 107 S.W.3d 240, 249 (Mo. banc 2003) (overruled on other grounds).

Dr. Wolf stated that Stevens was unable to return to work from the date of injury until the time of the knee replacement

surgery, which occurred on October 20, 1999. Dr. Wolf also stated that, for the three months after the surgery, Stevens would be unable to work, and for three months after that she could only work part-time. Stevens testified that she needed a six-month period after the surgery to heal, during which time she believed she could not work. Stevens testified that she did not work from the date of the accident until the end of her healing period in April of 2000. Dr. Wolf indicated that, when he last saw Stevens in April of 2000, he felt Stevens had reached maximum medical improvement. The record as a whole establishes that Stevens was unable to work for the sixty and five-sevenths weeks period following her accident and that the Commission relied upon sufficient and competent evidence.

Citizens' second point is denied and the Commission's award is affirmed.

BARNEY, P.J., and RAHMEYER, J., concur.