**Wanda FARMER, Appellant,**

v.

**ADVANCED CIRCUITRY DIVISION OF LITTON, and Constitution State Services Company, Respondents/Cross–Appellants,**

and

**Treasurer of the State of Missouri as Custodian of the Second Injury Fund, Respondent.**

Nos. 28787, 28788.

Missouri Court of Appeals,
Southern District,
Division Two.

July 3, 2008.

---

Greggory D. Groves, Springfield, MO, for Appellant, Wanda Farmer.

Raymond E. Whiteaker, Springfield, MO, for Cross Appellant, Advanced Circui-

try Division of Litton and Constitution State Services Company.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, MO, Cara Lee Harris, Assistant Attorney General, Springfield, MO, for Respondent.

DON E. BURRELL, J.

Wanda Farmer ("Claimant") and Advanced Circuitry Division of Litton ("Employer") both appeal from a decision of the Labor and Industrial Relations Commission ("the Commission").[1] After a hearing before an administrative law judge ("ALJ"), Claimant was found to have a permanent partial disability of thirty-five percent of her body as a whole and was also awarded a recovery for future medical care. The Commission adopted and affirmed the ALJ's award. Claimant appeals because she believes she should have been found to be totally and permanently disabled. Employer appeals because it believes Claimant should not have been awarded a recovery for future medical care.[2]

### Background

Claimant worked for Employer from 1979 to 1983. On January 21, 1983, Claimant injured her back when she slipped and fell while working for Employer. Claimant attempted to return to work for Employer on January 25, 1983, but was unable to successfully perform her duties because of physical limitations she had as a result of the injury. In an attempt to alleviate the problem, Claimant's physician, Dr. Ben Harmon, then performed surgery on her back in March of 1983.

Claimant had also injured her back eight years earlier ("the 1975 back injury") while working for a different employer. That injury had also required surgery, which Dr. Harmon performed in 1977.

Since being unable to successfully return to work for Employer, Claimant has not worked outside of her home. Claimant does, however, earn an income by providing babysitting services within her home. Claimant continued to experience back pain after her surgery in 1983, and continued to treat for her condition up through the time of the hearing.

In June of 1992, Claimant filed a claim with the Division of Workers Compensation seeking compensation for injuries she claimed stemmed from the 1983 back injury she suffered while working for Employer. This request for benefits also included a claim against the Second Injury Fund under Section 287.220.[3] Dr. Harmon thereafter performed yet another back surgery on Claimant in 1993.

At the hearing before the ALJ, Claimant presented the results of a "Rehabilitation Consultation and Evaluation" that was conducted in 1995 by Phillip Eldred ("Eldred"), a rehabilitation consultant. Based on his evaluation of Claimant, Eldred concluded that she was unable to compete for employment in the open market. The deposition testimony of Michael Lala ("Lala"), a rehabilitation counselor, was

1. The Second Injury Fund, a party at the hearing below, has also filed a respondent's brief. However, we do not address the arguments raised therein as no party has appealed the issues raised in the Second Injury Fund's brief.

2. Employer has also filed a motion to strike Claimant's brief for failure to comply with Missouri Rule of Civil Procedure 84.04(c)

(2008) in that her Statement of Facts section is allegedly deficient. We have reviewed Farmer's brief and find no merit in Employer's motion as the deficiencies alleged in the motion are not relevant to Claimant's point on appeal.

3. Unless otherwise noted, all references to statutes are to RSMo (2000).

also presented. Lala testified that, at the time of the hearing, Claimant was actually employed in the open market through her childcare activities. Disability ratings from three medical doctors were also presented. Dr. Harmon, Claimant's treating physician, rated her disability at 35% of the body as a whole. Dr. Janie Vale evaluated Claimant in 1988 on behalf of Employer and rated her at 40% permanent partial disability of the body as a whole, of which Dr. Vale attributed 25% to Claimant's 1983 on-the-job injury at Employer's premises and 15% to the 1975 back injury. Finally, Dr. David Volarich examined Claimant in 2004 and found her to be permanently totally disabled. Dr. Volarich reached that conclusion by combining disabilities resulting from Claimant's 1983 injury and the various other injuries she had previously incurred. As for the 1983 injury itself, Dr. Volarich rated Claimant at 60% permanent partial disability to the body as a whole.

In support of her claim for future medical care, Claimant presented Dr. Volarich's report which stated that:

> [i]n order to maintain her current state, [Claimant] will require ongoing care for her pain syndrome using modalities including but not limited to narcotics and non-narcotic medications (NSAIDs), muscle relaxants, physical therapy, and similar treatments as directed by the current standard of medical practice for symptomatic relief of her complaints.

> [Claimant] requires continuing treatment through a pain clinic for her back pain syndrome. She requires narcotic medications, trigger point injections, epidural steroid injections, foraminal nerve root blocks, TENS units and similar treatments for symptomatic relief. A dorsal column stimulator may be needed in the future when she becomes refrac-

tory to these more conservative pain management procedures.

> Surgical candidacy: Based on today's examination, additional surgery is not indicated at this time. Should she develop instability in the low back, fusion will be needed. The decision to perform any additional surgery on her back should be made in conjunction with her wishes, change in symptoms, and expert surgical opinion.

Claimant also testified that she had been on pain medication continuously since the 1983 injury. Both Dr. Vale and Dr. Volarich opined that Claimant had reached maximum medical improvement. Dr. Volarich also opined that Claimant developed failed back syndrome and arachnoiditis as a result of the 1983 injury and its subsequent surgical repair. Dr. Volarich went on to note that Claimant continues to experience extensive lower back difficulties; a finding he believed to be consistent with those conditions. No other evidence regarding future medical care was offered.

Based on the evidence that Claimant was actually earning an income by performing childcare duties in her home and the testimony of the three doctors and Lala, the ALJ found Claimant to be 35% permanently partially disabled. Relying on Dr. Volarich's report, the ALJ also ordered Employer to provide future medical care necessary to cure and relieve the effects of the 1983 injury. The Commission adopted the ALJ's decision.

### *Standard of Review*

■ When the Commission adopts and affirms the findings of an ALJ, we review the decision as adopted by the Commission. *Stevens v. Citizens Memorial Healthcare Foundation,* 244 S.W.3d 234, 237 (Mo.App. S.D.2008). Under section 287.495, an appellate court may only review a Commission award to determine if:

(1) The commission acted without or in excess of its powers; (2) The award was procured by fraud; (3) The facts found by the commission do not support the award; or (4) There was not sufficient competent evidence in the record to warrant the making of the award. *Hampton v. Big Boy Steel Erection,* 121 S.W.3d 220, 222 (Mo. banc 2003).

The case at bar involves only the fourth ground, so we examine the whole record to determine whether sufficient competent evidence exists to support the Commission's award. *Id.* at 223. We will find that insufficient competent evidence exists only "in the rare case when the award is contrary to the overwhelming weight of the evidence." *Id.* Finally, under section 287.495, the Commission's findings of fact are binding and conclusive absent fraud. Therefore, this Court defers to the Commission's witness credibility determinations. *Murphy v. Aaron's Automotive Products,* 232 S.W.3d 616, 620 (Mo.App. S.D.2007).

### Disability Rating

■ Claimant argues that the Commission should have found her to be permanently totally disabled and that its finding that Claimant suffered only a 35% permanent partial disability to the body as a whole is not supported by sufficient competent evidence.

■ "Total disability" is defined as the "inability to return to any employment and not merely [an] inability to return to the employment in which the employee was engaged at the time of the accident." Section 287.020.6. Generally, the measure of whether a claimant is totally disabled is whether the claimant is able to compete in

the open market. *Kuykendall v. Gates Rubber Co.,* 207 S.W.3d 694, 709 (Mo.App. S.D.2006). Permanent partial disability is defined as "a disability that is permanent in nature and partial in degree[.]" Section 287.190.6, RSMo Cum.Supp.2006.

Although rehabilitation consultant Eldred testified that Claimant was unable to compete in the open market, rehabilitation counselor Lala found that Claimant was currently employed in the open market through her childcare activities. Additionally, although Claimant testified that her husband was now helping her with those childcare activities, she also testified that she initially began performing them after the 1983 injury without the aid of her husband. Finally, none of the three examining doctors found that Claimant was permanently totally disabled as a result of the 1983 injury itself.

Claimant points out that Dr. Volarich opined in his report that Claimant was "permanently and totally disabled" when he examined her in 2004. Dr. Volarich reached that conclusion, however, by combining the disabilities Claimant suffered from her 1983 injury with her other pre-existing problems.[4] Dr. Volarich rated Claimant's disability from the 1983 injury alone at 60% of the body as a whole. Accordingly, we do not find this to be one of those rare cases where the award is contrary to the overwhelming weight of the evidence; instead we find that sufficient competent evidence existed to support the Commission's finding that Claimant suffered a permanent partial disability of 35% to the body as a whole as a result of the 1983 injury.

### Future Medical Care

■ Employer, on its cross appeal, claims that the Commission's award to

---

**4.** Farmer does not appeal the Commission's denial of her claim against the Second Injury Fund under Section 287.220.

Claimant for future medical care is not supported by sufficient competent evidence. Employer argues that any need for future medical care that Claimant may have is solely a result of injuries she sustained both before and after her 1983 injury.

■ To support an award for future medical care, the need for that care "must flow from the accident, via evidence of a medical causal relationship between the condition and the compensable injury, if the employer is to be held responsible." *Bowers v. Hiland Dairy Co.*, 132 S.W.3d 260, 270 (Mo.App. S.D.2004). The claimant need not show conclusive evidence of a need for future medical treatment; all that is required is a showing of a reasonable probability that future medical treatment will be necessary because of the work-related injury. *Id.; Stevens*, 244 S.W.3d at 237.

■ Authorized relief may include treatment that only provides relief from the effects of the injury even if the condition is not expected to improve. *Bowers*, 132 S.W.3d at 270. "While an employer may not be ordered to provide future medical treatment for non-work related injuries, an employer may be ordered to provide for future medical care that will provide treatment for non-work related injuries if evidence establishes to a reasonable degree of medical certainty that the need for treatment is caused by the work injury." *Stevens*, 244 S.W.3d at 238.

Employer first questions whether Dr. Volarich's evaluation indicates that Claimant is in need of future medical treatment because of the 1983 injury. In that evaluation, Dr. Volarich opined that as a result of the 1983 injury and its subsequent surgical repair, Claimant developed failed back syndrome and arachnoiditis. Dr. Volarich then noted that Claimant continues to experience extensive lower back difficulties; a finding consistent with both failed back syndrome and arachnoiditis. Finally, Dr. Volarich stated that Claimant "requires continuing treatment through a pain clinic for her back pain syndrome."

Employer points to numerous other incidents that have occurred since 1983 and argues that any of these later "injuries" could be the cause of Claimant's need for future medical treatment. Evidence was presented that, in the over twenty-year time period since the 1983 injury, Claimant has slipped and fallen on ice at least three times, was in a car accident, and slipped and "did the splits" on wet grass. Employer ignores, however, the opinions offered by doctors Harmon and Volarich that these incidents enumerated by Employer did not cause any new back injury to Claimant.

Employer also contends that Claimant's own testimony prevents a conclusion that any need for future medical care is derived from the 1983 injury and not from the 1975 injury. While it is true that Claimant testified she suffered from continuous, activity-limiting pain after the 1975 back injury and subsequent surgery in 1977, evidence was also presented that, in 1995, Claimant stated in a deposition that she had no pain following the 1977 surgery and her activities were not restricted following that surgery.[5] Moreover, Claimant stated to Dr. Vale in her 1988 evaluation that she "did fantastic" after the 1977 surgery and had no further problems. In 1995, Claimant also reported to Eldred that the 1977

5. Although this prior deposition testimony was originally being used in an attempt to impeach Claimant's testimony at the hearing, the entire deposition was eventually offered into evidence by counsel for the Second Injury Fund and was received by the ALJ without objection.

surgery was completely successful in that she experienced no more pain afterwards. As the Commission found Claimant's 1995 deposition testimony, along with Dr. Vale's and Eldred's reports to be more credible than Claimant's testimony at the hearing, we must defer to that finding. Section 287.495; *Murphy*, 232 S.W.3d at 620.

In conclusion, sufficient competent evidence also existed to support the Commission's finding that a recovery for future medical care for Claimant was appropriate and the award of the Commission is affirmed.

LYNCH, C.J., and RAHMEYER, J., Concur.