Phyllis TILLOTSON, Appellant,

v.

ST. JOSEPH MEDICAL CENTER,
Respondent.

No. WD 72948.

Missouri Court of Appeals,
Western District.

June 14, 2011.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 2, 2011.

Application for Transfer Denied
Oct. 4, 2011.

P.2009, unless otherwise indicated.

Mark E. Kolich, Lenexa, KS, for appellant.

J. Scott Gordon, Overland Park, KS, for respondent.

Before Division Two: JAMES M. SMART, JR., Presiding Judge, MARK D. PFEIFFER, Judge and CYNTHIA L. MARTIN, Judge.

CYNTHIA L. MARTIN, Judge.

Phyllis Tillotson ("Tillotson") appeals from the Labor and Industrial Relations Commission's ("the Commission") Final Award denying compensation. Tillotson contends that the Commission erred because: (1) the workers' compensation act does not require that Tillotson's otherwise compensable accident be the prevailing factor in requiring a total knee replacement; (2) the finding that Tillotson's accident was not the prevailing factor in requiring a total knee replacement was not supported by substantial competent evidence; (3) the Commission disregarded uncontradicted medical testimony that Tillotson's accident was the prevailing factor in causing her medical injury and disability; and (4) the Commission relied on the 2005 amendments to the workers' compensation act, which are unconstitutional. We reverse and remand with directions to enter an award of compensation consistent with this Opinion.

## Factual and Procedural History

Tillotson is a registered nurse. In January 2006, she was employed by St. Jo-

seph's Medical Center ("Employer"). On January 7, 2006, Tillotson was helping another nurse move a patient who was lying in bed when the bed began to roll causing Tillotson to lose her balance. Tillotson bounced off the wall, striking her right knee against a chair. Tillotson may also have twisted her knee.

Following the accident, Tillotson continued working for a few weeks, but experienced significant and increasing pain. Employer authorized an evaluation by Dr. Michael Perll ("Dr. Perll") who determined via an MRI that Tillotson had torn her lateral meniscus. Dr. Perll also determined that Tillotson had some degenerative changes involving the medial meniscus related to arthritis.

Employer authorized Tillotson to be seen by an orthopedic surgeon, Dr. Gregory Van den Berghe ("Dr. Van den Berghe"). Dr. Van den Berghe confirmed Dr. Perll's diagnosis. Dr. Van den Berghe determined that an arthroscopy could benefit the torn lateral meniscus, but would not alleviate Tillotson's pain. Dr. Van den Berghe believed that both Tillotson's torn lateral meniscus and her pre-existing degenerative condition were contributing to her pain and symptoms, and that a total knee replacement would provide her with more lasting pain relief.

Employer referred Tillotson to Dr. Daniel Stechschulte ("Dr. Stechschulte") for a second opinion. Dr. Stechschulte agreed that Tillotson had suffered a torn lateral meniscus in her right knee, and that she also suffered from a degenerative arthritic condition. He noted that a tear of the lateral meniscus would normally be repaired by arthroscopic surgery. However, arthroscopic surgery is not recommended for patients with severe arthritis. Arthroscopy to remove a torn lateral meniscus can worsen a degenerative arthritic condition. Dr. Stechschulte agreed that Tillotson's torn lateral meniscus should be repaired by a total knee replacement, but he opined that "her pre-existing arthritis is the *major prevailing factor for the need for this surgery.*" (Emphasis added.)

Employer does not contest that Tillotson sustained an acute lateral meniscus injury as a result of the January 7, 2006 accident. Employer paid for Tillotson's medical care following the accident in the total amount of $4,593.80. However, based on Dr. Stechschulte's evaluation, Employer refused to authorize any further medical treatment for Tillotson's torn lateral meniscus, including the total knee replacement.

Tillotson proceeded with the total knee replacement with Dr. Van den Berghe at a cost of $4,646.21. While recuperating from the total knee replacement, Tillotson was temporarily and totally disabled from June 16, 2006 through December 11, 2006. Tillotson returned to her job, full time, and without restrictions or accommodations, on December 11, 2006, and continued working until her planned retirement on October 1, 2007.

In November 2007, Tillotson filed a claim for workers' compensation. She sought recovery for the cost of the total knee replacement, for future medical treatment, for temporary total disability for the recuperative period following surgery, and for residual permanent partial disability of the right leg.

Tillotson's claim was heard by the Division of Workers' Compensation ("the Division"). The parties stipulated that Tillotson's injury date was January 7, 2006; that she notified Employer of her alleged injury and filed her workers' compensation claim timely; and that Employer provided Tillotson with medical care costing $4,593.80.

In addition to the testimony of Employer's experts, Drs. Van den Berghe and Stechschulte, outlined above, the Division

heard the testimony of Tillotson's expert, Dr. P. Brent Koprivica ("Dr. Koprivica"). Dr. Koprivica agreed that Tillotson sustained a torn lateral meniscus as a result of the January 7, 2006 accident. He also agreed that Tillotson's pre-existing arthritis coupled with the torn lateral meniscus warranted a total knee replacement, and that the combination of the conditions rendered arthroscopy an ineffective means to address Tillotson's torn lateral meniscus. Dr. Koprivica further opined that the January 7, 2006 accident destabilized Tillotson's right knee causing an aggravation and a progression of the pre-existing degenerative arthritis. Dr. Koprivica opined that Tillotson's work injury was, therefore, the prevailing factor in causing the need for a total knee replacement. Dr. Koprivica rated Tillotson's resultant permanent partial disability of the leg at 50%. Dr. Koprivica also testified that Tillotson would require future medical care.

Following the hearing, the Division issued its Findings of Fact and Rulings of Law. The Division found that "Tillotson sustained a compensable accident that arose out of and in the course and scope of her employment on January 7, 2006 when she struck her right knee on the chair." (Finding number 4.) The Division found that "Ms. Tillotson's January 7, 2006 accident was the prevailing factor in causing her acute lateral meniscus injury." (Finding number 11.) This determination has not been appealed by the Employer and, thus, is not at issue in this case.

The Division found that "Ms. Tillotson's January 7, 2006 accident was not the prevailing factor causing her medial meniscus injury; this was a chronic condition unrelated to the accident." (Finding number 12.) The Division found that "Ms. Tillotson's July 17, 2006 right total knee replacement ... would not have been performed absent symptoms (pain)." (Finding number 13.) The Division found

that "Ms. Tillotson's arthritis present at the time of her accident was the prevailing factor in causing her need for her [total knee replacement]." (Finding number 14.) On this latter subject, the Division expressly found as follows with respect to the testimony of Dr. Koprivica:

> While Dr. Koprivica is a well-qualified rating doctor, I find that he does not possess the expertise necessary to offer credible conclusive opinions regarding the cause of precise orthopedic conditions. When presented with the opinions of board certified and board eligible orthopedic surgeons whose practices are predominantly centered on treating patients, such as Drs. Van den Berghe and Stechschulte, I will defer—and give greater weight—to their medical causation opinions instead of Dr. Koprivica's opinions. I do not find Dr. Koprivica's opinion that Ms. Tillotson's January 7, 2006 accident was the prevailing factor in causing her need for a [total knee replacement] credible and I disbelieve this opinion.

(Finding number 17.) The Division found that "[h]ad Ms. Tillotson suffered only a meniscal tear, a [total knee replacement] would not have been required. . . . Ms. Tillotson required a [total knee replacement] because of her arthritis alone that existed at the time of her accident." (Finding number 18.)

Based on these findings, the Division denied Tillotson's claim for recovery of the medical costs for the total knee replacement, for temporary total disability during the post-surgical recuperative period, and for future medical expenses, finding that these claims were not "due to her accident." (Finding numbers 20, 21, and 23.) The Division also denied Tillotson's claim for permanent partial disability. (Finding number 19.)

Tillotson appealed the Division's decision to the Labor and Industrial Relations Commission ("the Commission"). The Commission issued its Final Award affirming the Division's award in a two to one decision, attaching and incorporating the Division's findings and rulings as its own.[1]

Tillotson filed this timely appeal.

## Standard of Review

■ "In reviewing a workers' compensation final award, 'we review the findings and award of the Commission rather than those of the [Division].'" *Sell v. Ozarks Medical Center*, 333 S.W.3d 498, 505 (Mo. App. S.D.2011) (citation omitted). However, where the Commission affirms and adopts the findings and conclusions of the Division, we necessarily review the Division's findings and conclusions, as adopted by the Commission. *Id.*; *see Hawthorne v. Lester E. Cox Med. Ctrs.*, 165 S.W.3d 587, 592 (Mo.App. S.D.2005).

■ Our standard of review is controlled by section 287.495.1[2] which provides:

The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:

(1) That the commission acted without or in excess of its powers;

(2) That the award was procured by fraud;

(3) That the facts found by the commission do not support the award;

(4) That there was not sufficient competent evidence in the record to warrant the making of the award.

We review, therefore, questions of law *de novo*, and without deference to the Commission. *Johnson v. Denton Constr. Co.*, 911 S.W.2d 286, 287 (Mo. banc 1995). We review factual findings by examining "'the whole record to determine if it contains sufficient competent and substantial evidence to support the award, i.e. whether the award is contrary to the overwhelming weight of the evidence.'" *Angus v. Second Injury Fund*, 328 S.W.3d 294, 297 (Mo.App. W.D.2010) (quoting *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 222–23 (Mo. banc 2003)). "We defer to the Commission on issues concerning credibility and weight to be given conflicting evidence." *Bailey v. Phelps County Regional Medical Center*, 328 S.W.3d 770, 773 (Mo.App. S.D.2010).

## Analysis

Tillotson asserts four points on appeal. First, Tillotson asserts that the Commission erroneously employed a prevailing factor analysis to conclude that Tillotson was not entitled to compensation associated with her total knee replacement. Second, Tillotson asserts in the alternative that the Commission's finding that her accident was not the "prevailing factor" requiring a total knee replacement was not supported by substantial and competent evidence. Third, Tillotson contends the Commission erroneously disregarded uncontradicted medical evidence that Tillotson's accident was the prevailing factor in causing her torn lateral meniscus, and thus her medical condition and disability. Finally, Tillotson argues that the 2005 amendments to the worker's compensation act are unconstitutional.

---

**1.** The dissent, authored by John J. Hickey, would have reversed the Division's decision because denial of benefits was based on the legally erroneous belief that Tillotson was required to prove that her compensable accident was the prevailing factor in causing her need for a total knee replacement.

**2.** All statutory references are to RSMo 2000 as supplemented unless otherwise indicated.

Because Point Relied On one is dispositive of this appeal, we need not address Tillotson's Points Relied On two through four.

### Point I

■ The Commission denied Tillotson workers' compensation benefits because it found that Tillotson's accident was not the prevailing factor in requiring Tillotson to undergo a total knee replacement. Since all of the compensation sought by Tillotson was related to, or flowed from, the total knee replacement, the Commission concluded no compensation was due. Tillotson argues the Commission committed error because section 287.140.1 guarantees an injured worker the right to medical treatment reasonably necessary to cure and relieve the effects of a compensable injury and does not require a finding that a work place accident was the prevailing factor in causing the need for particular medical treatment. The Employer argues that we must read section 287.140.1 to include the requirement that a compensable injury is the prevailing factor in requiring particular medical treatment. We agree with Tillotson and disagree with the Employer.

This case highlights the material distinction between determining whether a compensable injury has occurred and determining the medical treatment required to be provided to treat a compensable injury. That distinction is framed by section 287.120.1 which provides, in pertinent part, that "[e]very employer subject to the provisions of this chapter shall be liable, irrespective of negligence, *to furnish compensation* under the provisions of this chapter *for personal injury or death of the employee by accident arising out of and in the course of employee's employment.*" (Emphasis added.) Section 287.120.1 thus requires two independent inquiries. First, it must be determined whether an employee has suffered a compensable injury "by accident arising out of and in the course of employee's employment." Section 287.120.1. Second, *if* a compensable injury has been sustained by an employee, the appropriate compensation to be furnished must be determined. *Id.*

The determination of whether an employee has sustained a compensable injury as a result of a workplace accident is controlled by section 287.020. An "accident" is statutorily defined as "an unexpected traumatic event or unusual strain identifiable by time and place of occurrence and producing at the time objective symptoms of an injury caused by a specific event during a single work shift." Section 287.020.2. "Injury" is statutorily defined as:

[A]n injury which has arisen out of and in the course of employment. An injury by accident is compensable only if the accident was the ***prevailing factor*** in causing both the resulting medical condition and disability. "The ***prevailing factor***" is defined to be the primary factor, causing both the resulting medical condition and disability.

Section 287.020.3(1) (emphasis added).

Here, the Commission found that Tillotson "sustained a compensable accident that arose out of the scope of her employment." Specifically, the Commission found that the "January 7, 2006 accident was the prevailing factor in causing [Tillotson's] acute lateral meniscus injury." Thus, the first determination required by section 287.120.1–whether a compensable injury has occurred—is not at issue in this case.

Once a compensable injury is found, the inquiry turns to the calculation of compensation or benefits to be awarded. The compensation or benefits which can be awarded an injured employee include medical treatment (section 287.140), temporary total disability (section 287.170), and per-

manent partial or permanent total disability (section 287.190 and section 287.200). Each of these statutes presumes, by express reference, that an "injury" has occurred; i.e., that the initial determination required under section 287.120.1 has already been made. Stated differently, each of these statutes presumes that the "prevailing factor" test described in section 287.020.3(1) has already been applied to permit the conclusion that a compensable injury has occurred.

Here, all of the compensation sought by Tillotson related directly to, or flowed from, the fact that Tillotson underwent a total knee replacement.[3] The Commission denied Tillotson compensation because it concluded that although Tillotson suffered a compensable accident, that accident was not the "prevailing factor" in requiring the total knee replacement. A total knee replacement is not, however, a medical condition or disability. It is a form of medical treatment employed to address a medical condition or disability. The central question in this case is, therefore, whether the Commission erroneously interpreted and applied the law when it denied Tillotson compensation because her conceded compensable injury was not the "prevailing factor" in requiring a total knee replacement.

To answer this question, we must construe section 287.140.1 which describes an employer's obligation to afford medical care and treatment following a compensable injury. Section 287.140.1 provides that "in addition to all other compensation paid to the employee, the employee shall receive and the employer shall provide such medical, surgical, chiropractic, and hospital treatment, including nursing, cus-

todial, ambulance and medicines, *as may reasonably be required after the injury or disability, to cure and relieve the effects of the injury.*" (Emphasis added.) Section 287.140.1 makes no reference to a "prevailing factor" test and, as previously noted, presumes of necessity that the presence of a compensable injury under section 287.020.3(1) (which does require application of the prevailing factor test) has already been demonstrated. The legal standard for determining an employer's obligation to afford medical care is clearly and plainly articulated in section 287.140.1 as whether the treatment is *reasonably required to cure and relieve the effects of the injury.* This was not the legal standard employed by the Commission. Instead of determining whether Tillotson established that a total knee replacement was reasonably required to cure and relieve the effects of her torn lateral meniscus, the Commission required Tillotson to prove that her torn lateral meniscus was the "prevailing factor" in requiring a total knee replacement. The Commission thus imposed a heightened burden on Tillotson beyond that described in section 287.140.1.

The Commission has confused the determination of a whether a compensable injury has been established with the determination of what medical care and treatment an employer is obligated to provide to care for and relieve an established compensable injury. The Commission's confusion apparently generates from the Missouri General Assembly's sweeping changes to The Workers' Compensation Law in 2005. Among other things, the 2005 amendments added the "prevailing factor" test to section 287.020.3(1)'s definition of "injury,"

---

**3.** The medical costs Tillotson sought to recover were the costs of the total knee replacement surgery. The temporary total disability was related to the post-surgical recuperative period. The permanent partial disability was related to the limitations resulting from having had a total knee replacement. Finally, the future medical expenses evidence related to the likely need to "revise" the total knee replacement.

thus increasing the burden on an employee to establish the presence of a compensable injury.

 The 2005 amendments to The Workers' Compensation Law did not, however, incorporate a "prevailing factor" test into the determination of medical care and treatment required to be afforded for a compensable injury by section 287.140.1. In fact, the 2005 amendments left section 287.140.1 virtually unchanged, adding only inconsequential language unrelated to the standard to be applied to determine whether medical treatment must be afforded an injured employee.

> [W]here a statute is amended only in part, or as respects only certain isolated and integral sections thereof and the remaining sections or parts of the statute are allowed and left to stand unamended, unchanged, and apparently unaffected by the amendatory act or acts, it is presumed that the Legislature intended the unamended and unchanged section or parts of the original statute to remain operative and effective, as before the enactment of the amendatory act.... Furthermore, "[i]n construing a statute a fundamental precept is that the legislature acted with knowledge of the subject matter and the existing law."

*Sell,* 333 S.W.3d at 508 (citations omitted). In adopting the 2005 amendments to The Workers' Compensation Law, the legislature "clearly expressed its intent to negate the effects of various cases and their progeny relevant to some of the sections and terms of the workers' compensation chapter."[4] *Id.* "No such actions were directed toward" section 287.140.1. *Id.* "Such an omission signals an intentional acceptance of existing case law governing the unchanged portion of" section 287.140.1. *Id.*

 The existing case law at the time of the 2005 amendments to The Workers' Compensation Law instructs that in determining whether medical treatment is "reasonably required" to cure or relieve a compensable injury, it is immaterial that the treatment may have been required because of the complication of pre-existing conditions, or that the treatment will benefit both the compensable injury and a pre-existing condition. *Bowers v. Hiland Dairy Co.,* 188 S.W.3d 79, 83 (Mo.App. S.D.2006). Rather, once it is determined that there has been a compensable accident, a claimant need only prove that the need for treatment and medication flow from the work injury. *Id.* The fact that the medication or treatment may also benefit a non-compensable or earlier injury or condition is irrelevant. *Id.* In *Stevens v. Citizens Memorial Healthcare Foundation,* 244 S.W.3d 234, 236 (Mo.App. S.D. 2008), claimant, while working, heard a loud snap in the back of her left knee before it gave way.[5] Claimant was found to have sustained torn cartilage. *Id.* During the course of her treatment, it was determined that claimant also suffered from the pre-existing condition of chondromalacia, a condition which was aggravated by the work-place injury. *Id.* Claimant required arthroscopic surgery and then a subsequent total knee replacement to treat the torn cartilage. *Id.* Employer refused coverage for both procedures. *Id.* The Commission awarded claimant temporary total disability, permanent partial disability, and future medical treatment, an award which was affirmed on appeal. *Id.* at 236–39. Though Employer argued that the claimant would likely have required a total knee replacement at some point in her life anyway due to her pre-existing condition,

---

4. *See, e.g.* section 287.020.10.

5. Claimant's work-place injury occurred in 1999, and was thus not subject to the 2005 amendments to the Workers' Compensation Law.

the Southern District held that under section 287.140.1, an employer is responsible for medical treatment, including future medical treatment, if the care "'flow[s] from the accident, via evidence of a medical causal relationship between the condition and the compensable injury.'" *Id.* at 238 (quoting *Bowers,* 132 S.W.3d at 270). Critical to the instant case, the Southern District held:

> [W]hether or not [claimant] may have needed future treatment even if the injury did not occur is irrelevant to the analysis of whether the future medical care flows from the injury that actually occurred. Simply put, the injury arose out of [claimant's] employment, the knee replacement surgery was a necessary treatment of the injury and because of the limited life span of knee prosthetics, future medical treatment is likely to be needed.

*Id. Bowers* and *Stevens* highlight the distinction between determining whether a compensable injury has occurred under section 287.020.3(1), and determining what medical care and treatment is reasonably required to treat the compensable injury under section 287.140.1.

 We thus conclude that the Commission has erroneously interpreted and applied section 287.140.1. "The primary rule of statutory construction is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider the words used in their plain and ordinary meaning." *Wolff Shoe Co. v. Director of Revenue,* 762 S.W.2d 29, 31 (Mo. banc 1988). "[W]here a statute's language is clear and unambiguous, there is no room for construction."

*Id.* "The plain and unambiguous language of a statute cannot be made ambiguous by administrative interpretation and thereby given a meaning which is different from that expressed in a statute's clear and unambiguous language." *Id.* The clear and unambiguous terms of section 287.140.1 require nothing more than a demonstration that certain medical care and treatment is reasonably required to cure and relieve the effects of an injury.[6] The Commission erroneously extended the prevailing fact test added to section 287.030(1)'s definition of "injury" into section 287.140.1's description of the standard for determining required medical care.

In reaching our conclusion, we are mindful of the Eastern District's decision in *Gordon v. City of Ellisville,* 268 S.W.3d 454 (Mo.App. E.D.2008), a decision relied on by the Employer to argue that the issue presented by the instant case has already been determined in favor of the construction of section 287.140.1 advanced by the Employer. We disagree with the Employer's interpretation of *Gordon.* In *Gordon,* a claimant was preliminarily believed to have sustained a rotator cuff tear as a result of a work-place accident. However, during surgery to correct the rotator cuff tear, the surgeon found no evidence of acute injury, and found only evidence of a pre-existing degenerative condition. *Id.* at 460. As a result, the Commission found (and the Eastern District affirmed) that the claimant had not sustained a compensable injury-that is to say an injury as a result of a work-place accident. Unfortunately, despite the relatively routine nature of the issue actually in dispute in

---

**6.** Because the language employed by the legislature in section 287.140.1 is plain and clear, we need not resort to principles of statutory construction. Were we required to do so, however, we would be required by section 287.800.1 to strictly construe section 287.140.1. "Strict construction means that a statute can be given no broader application than is warranted by its plain and unambiguous terms.'" *Sell,* 333 S.W.3d at 507 (citation omitted). A strict construction of a statute presumes nothing that is not expressed. *Id.* Thus, strict construction of section 287.140.1 would yield the same result.

*Gordon,* the Eastern District framed the issue before it as "whether Claimant established that his 2005 work accident was the **prevailing factor in causing his need for rotator cuff surgery and post-surgery recovery.**" *Id.* at 459 (emphasis added). The Employer has latched on to this language, out of context, to argue that the Eastern District has ruled that the "prevailing factor" test modifies the otherwise clear and unambiguous standard set forth in section 287.140.1. A full and fair reading of *Gordon* suggests otherwise. The Eastern District was not endorsing the imposition of a "prevailing factor" test in determining whether medical treatment is reasonably required under section 287.140.1 once a compensable injury has been found. In fact, construction of section 287.140.1 was not at issue, nor discussed, in *Gordon. Gordon* cannot and should not be read, therefore, to stand for the proposition that the "prevailing factor" test applies to determine whether an employer is obligated to provide certain medical care and treatment under section 287.140.1 once a compensable injury has been established under section 287.020.3(1).

We conclude that the Commission committed error as a matter of law by applying the prevailing factor test to determine whether particular medical treatment was required to treat Tillotson's compensable injury.

Had the Commission applied the proper standard described in section 287.140.1 to this case, the Commission would have been required to find as a matter of law that the total knee replacement was reasonably required to cure and relieve Tillotson's compensable injury (her torn lateral meniscus). The opinions of Drs. Stechschulte, Koprivica and Van den Berghe were aligned. Each agreed that Tillotson suffered an acute injury following her workplace accident-a torn lateral meniscus in

her right knee. Each agreed that a torn lateral meniscus would normally be remediated by arthroscopic surgery. Each agreed that Tillotson also suffered from a pre-existing degenerative arthritic condition that made her an ineligible candidate for arthroscopic surgery to remediate her torn lateral meniscus. Each agreed that as a result, Tillotson's torn lateral meniscus should be remediated by a total knee replacement. The only source of disagreement amongst the experts with respect to the causal relationship between Tillotson's torn lateral meniscus and the need for a total knee replacement related to whether the torn lateral meniscus was the "prevailing factor" requiring the total knee replacement. As we have noted, this dispute is immaterial to determining whether an employer is obligated by section 287.140.1 to provide an employee with particular medical treatment (in this case, a total knee replacement) because the treatment is **reasonably required** to cure and relieve the effects of a compensable injury. No medical expert in this case contested that a total knee replacement was reasonably required to cure and relieve the effects of Tillotson's torn lateral meniscus. In fact, the medical experts agreed a total knee replacement was the only effective means available to cure and relieve the effects of Tillotson's torn lateral meniscus.

■■ "[W]e defer to the Commission on issues involving the credibility of witnesses and the weight to be given testimony, and we acknowledge that the Commission may decide a case 'upon its disbelief of uncontradicted and unimpeached testimony.'" *Alexander v. D.L. Sitton Motor Lines,* 851 S.W.2d 525, 527 (Mo. banc 1993) (quoting *Ricks v. H.K. Porter, Inc.,* 439 S.W.2d 164, 167 (Mo.1969)). "However, 'the [C]ommission may not substitute an administrative law judge's personal opinion on the question of medical causation of [an injury] for

the uncontradicted testimony of a qualified medical expert.'" *Angus*, 328 S.W.3d at 300 (quoting *Wright v. Sports Associated, Inc.*, 887 S.W.2d 596, 600 (Mo. banc 1994), overruled on other grounds by *Hampton*, 121 S.W.3d at 220). Here, the uncontested medical evidence was that there was a causal connection between Tillotson's torn lateral meniscus and medical necessity of treating that injury by a total knee replacement. In fact, counsel for the Employer has agreed that the reasonableness of the total knee replacement is not at issue.[7] Notwithstanding the uncontested medical causation evidence in this case, the Commission found that "Ms. Tillotson required a [total knee replacement] *because of her arthritis alone* that existed at the time of her accident." (Emphasis added.) The Commission thus improperly substituted its "personal opinion" with respect to the causal relationship between Tillotson's torn lateral meniscus and the need for a total knee replacement in total disregard for the contrary and uncontested medical causation evidence that the torn lateral meniscus could only be treated in Tillotson's case by a total knee replacement.

We conclude that the Employer was obligated by section 287.140.1 to provide Tillotson with a total knee replacement because a total knee replacement was reasonably required to cure and relieve her compensable injury (the torn lateral meniscus) given the uncontested medical causation evidence in this case.[8] It necessarily follows that the Commission's rejection of Tillotson's compensation claim (all of which was directly related to, or flowed from, the total knee replacement) was legally erroneous. We turn, therefore, to consideration of Tillotson's claims for compensation.

Pursuant to section 287.140.1, Tillotson was entitled to compensation in the amount of $4,646.21 representing the medical costs she incurred to have the total knee replacement. *Martin v. Town and Country Supermarkets*, 220 S.W.3d 836, 844 (Mo.App. S.D.2007) (holding that where employer fails to provide required treatment, employee may independently secure the treatment and hold the employer liable for the costs).

With respect to Tillotson's claim for temporary total disability, the Commission found "that Ms. Tillotson *was totally disabled* from June 16, 2006 through December 11, 2006 representing twenty-five and three-sevenths weeks," a period of disability dovetailing with Tillotson's recuperation from the total knee replacement. (Emphasis added.) As we have determined, the total knee replacement was reasonably required to treat the torn lateral meniscus. An employee is entitled to recover compensation for disability and/or future medical care necessitated by treatment reasonably required to

---

7. At the conclusion of the cross examination of Dr. Van den Berghe, counsel for Tillotson inquired of counsel for the Employer "it's my understanding that there's no dispute regarding the reasonableness or the necessity of the treatment provided, and it's simply a matter of whether this was the preliminary [sic] factor or not. Is that true?" Counsel for the Employer responded: "Yes. We're not challenging that the knee replacement wasn't reasonable and necessary, just that it is not work related." During oral argument, counsel for the Employer agreed the Employer was not contesting the reasonableness of Tillotson's total knee replacement.

8. In fact, section 287.140.8 expressly anticipates that an employer may be required to furnish an injured employee with "surgical orthopedic joints . . . as needed for life whenever . . . the injured employee may be partially or wholly relieved of the effects of a permanent injury by the use thereof." There is no quarrel in this case that a torn lateral meniscus will not heal itself, and is thus a "permanent injury" which must be remediated, if at all, by medical intervention.

cure or relieve a compensable injury. *See, e.g., Martin,* 220 S.W.3d at 845; *Jennings v. Station Casino St. Charles,* 196 S.W.3d 552, 560 (Mo.App. E.D.2006); *Wilson v. Emery Bird Thayer Co.,* 403 S.W.2d 953, 957 (Mo.App.1966). Tillotson is thus entitled to compensation for the period of total disability found by the Commission.

On the claim for compensation for permanent partial disability, there are two issues to address. The first is whether medical causation evidence established the presence of a permanent partial disability. The second is the specific rating to be assigned to that disability.

On the first subject, the Commission found that "[n]either Drs. Van den Berghe nor Stechschulte offered an opinion as to whether Ms. Tillotson suffered any disability from either her torn lateral meniscus or her [total knee replacement]." In fact, Dr. Koprivica was the only expert providing an opinion on the subject of permanent partial disability. Dr. Koprivica opined that Tillotson did suffer from a permanent partial disability caused by the torn lateral meniscus and the total knee replacement.

Though the Commission expressly rejected as not credible Dr. Koprivica's causation opinion about whether Tillotson's compensable accident was the "prevailing factor" in requiring the total knee replacement, the Commission made no such credibility finding with respect to Dr. Koprivica's causation opinion that Tillotson was permanently disabled to some degree due to the torn lateral meniscus and total knee replacement. In fact, the Commission did not question that Tillotson suffered a permanent partial disability. Rather, the Commission was only concerned by the fact that Dr. Koprivica "did not apportion *the disability that resulted* from [Tillotson's] torn lateral meniscus and the [total knee replacement]." The Commission found that because a total knee replacement results in the removal of all menisci

(and not just the lateral meniscus), "it would be very difficult for a doctor to apportion the disability from a torn lateral meniscus when a [total knee replacement] is performed," suggesting it was the Commission's opinion that Tillotson's permanent partial disability was entirely attributable to the total knee replacement. As we have discussed, it is immaterial the manner in which Tillotson's permanent partial disability should or could be allocated between her torn lateral meniscus and the total knee replacement, as Tillotson is entitled to compensation for disability arising out of medical treatment reasonably required by section 287.140.1 to treat a compensable injury. *See Martin,* 220 S.W.3d at 845; *Jennings,* 196 S.W.3d at 560; *Wilson,* 403 S.W.2d at 957. We conclude that Tillotson was entitled to an award for permanent partial disability.

 Dr. Koprivica assigned a specific rating to Tillotson's permanent partial disability of "50% permanent partial disability of the right lower extremity at the level of the knee at the 160–week level." Dr. Koprivica's assignment of a *specific* rating is not a causation finding. "The Commission is not bound by the experts' exact percentages of disability and is free to find a disability rating higher or lower than that expressed in medical testimony." *Hawthorne,* 165 S.W.3d at 594 (citing *Sullivan v. Masters Jackson Paving Co.,* 35 S.W.3d 879, 885 (Mo.App. S.D.2001), overruled on other grounds by *Hampton,* 121 S.W.3d at 220). "This is because a claimant's 'degree of disability is not solely a medical question.'" *Id.* (quoting *Lytle v. T–Mac, Inc.,* 931 S.W.2d 496, 502 (Mo.App. W.D.1996) overruled on other grounds by *Hampton,* 121 S.W.3d at 220). As such, the Commission was not required to accept the specific rating percentage assigned by Dr. Koprivica, notwithstanding the uncon-

tradicted nature of his testimony. *Alexander*, 851 S.W.2d at 527.

■ The Commission did not accept or reject Dr. Koprivica's specific disability rating, though the Commission did find that "Dr. Koprivica is a well-qualified rating doctor." The Commission denied Tillotson compensation for permanent partial disability at the percentage of disability opined by Dr. Koprivica (or at a percentage it might independently have found) because of its erroneous belief that the disability Tillotson suffered from the torn lateral meniscus and from the total knee replacement had to be allocated. As we have discussed, these disabilities coalesce, and were not required to be allocated in this case. Tillotson is entitled to an award for permanent partial disability. However, "[t]he determination of the specific percentage of disability is a finding of fact within the special province of the commission." *Shipp v. Treasurer of the State*, 99 S.W.3d 44, 53 (Mo.App. E.D.2003) (overruled on other grounds by *Hampton*, 121 S.W.3d at 220). Thus, we direct the Commission on remand to make a factual finding regarding the specific percentage of Tillotson's permanent partial disability of the right lower extremity at the level of the knee based on the record.

Finally, Tillotson sought compensation for future medical expenses. The Commission found that "[n]either Drs. Van den Berghe nor Stechschulte testified that Ms. Tillotson required additional medical care,[9] and Dr. Koprivica only testified that she required testing for deep venous thrombo-

sis relating to her [total knee replacement]." In fact, the record as a whole reveals that Dr. Koprivica also testified that there is a risk that Tillotson's knee replacement would have to be revised, a medical reference to the finite longevity of prosthetic devices. Dr. Koprivica testified that Tillotson should be provided with appropriate monitoring, and that if necessary, her total knee replacement should be revised.[10]

Dr. Koprivica's testimony that Tillotson's compensable injury (and related required medical care) will require the need for future medical care was an uncontroverted medical causation opinion. The Commission was not free to substitute its personal opinion on the subject of future medical care. *Angus*, 328 S.W.3d at 300. The Commission did not reject Dr. Koprivica's opinion that Tillotson would require future medical care as not credible.[11] Rather, the Commission denied Tillotson compensation for future medical care "[because] ... Ms. Tillotson's accident was not the prevailing factor in causing her [total knee replacement]." As we have discussed, the legal foundation for the Commission's determination was erroneous.

■ "To receive an award of future medical benefits, a claimant need not show 'conclusive evidence' of a need for future medical treatment." *Stevens*, 244 S.W.3d at 237 (quoting *ABB Power T & D Co. v. Kempker*, 236 S.W.3d 43, 52 (Mo.App. W.D.2007)). "Instead, a claimant need only show a 'reasonable probability' that,

---

9. Nor did Drs. Van den Berghe and Stechschulte testify that Tillotson did not require future medical care. Their testimony is simply silent on the subject of future medical care.

10. We observe, again, that section 287.140.8 envisions that an employer may be obligated to afford an injured employee "surgical orthopedic joints ... as needed ... for life," a

recognition that such joints require monitoring and potential replacement.

11. Again, we observe that the only credibility finding the Commission made relating to Dr. Koprivica's testimony related to his opinion that the torn lateral meniscus was the prevailing factor requiring the total knee replacement.

because of her work-related injury, future medical treatment will be necessary. A claimant need not show evidence of the specific nature of the treatment required." *Id.*

Tillotson met her burden to establish that future medical care would be necessary based on our review of the record as a whole. The Commission did not improvidently offer its own opinion on this subject in the face of uncontested medical causation evidence that future medical care would be required. Neither did the Commission reject the uncontested medical causation evidence on the subject of future medical care as not credible. We conclude, therefore, that Tillotson is entitled to an award for future medical expenses.

In summary, we conclude that once the Commission found that Tillotson suffered a compensable injury, the Commission was required to award her compensation for medical care and treatment reasonably required to cure and relieve her compensable injury, and for the disabilities and future medical care naturally flowing from the reasonably required medical treatment. Because the uncontested medical evidence established that a total knee replacement was reasonably required to treat Tillotson's torn lateral meniscus, Tillotson is entitled to recover the cost of the total knee replacement surgery, for total disability during the recuperative period following the total knee replacement, for permanent partial disability resulting from the total knee replacement, and for future medical expenses necessitated by the total knee replacement.

Point one is granted. We need not address, therefore, the issues raised by Tillotson in points two through four.

## Conclusion

We affirm the Commission's Final Award insofar as it found that Tillotson sustained a compensable injury. We re-verse the Commission's Final Award insofar as it denied Tillotson compensation for her compensable injury. We remand this matter to the Commission for entry of an award of compensation in favor of Tillotson, and consistent with this Opinion, which shall include the cost of the total knee replacement in the amount of $4,646.21, temporary total disability from June 16, 2006 through December 11, 2006 representing twenty five and three-sevenths weeks, permanent partial disability of the right lower extremity at the level of the knee at a percentage of disability to be found by the Commission based on the record, and future medical expenses.

All concur.