**Ronald ARMSTRONG, Claimant–Appellant,**

**v.**

**TETRA PAK, INC., and Treasurer of the State of Missouri as Custodian of the 2nd Injury Fund, Respondents–Respondents.**

**No. SD 31971.**

Missouri Court of Appeals,
Southern District,
Division Two.

Dec. 7, 2012.

Motion for Rehearing and/or Transfer to Supreme Court Denied
Dec. 26, 2012.

467

Michael A. Moroni, Bloomfield, MO, for Appellant.

Frank A. Rodman, Cape Girardeau, MO, for Respondent Treasurer of the State of Missouri.

Stephen H. Larson, St. Louis, MO, for Respondent Tetra Pak, Inc.

JEFFREY W. BATES, J.

Ronald Armstrong (Claimant) appeals from a final award entered by the Labor and Industrial Relations Commission (Commission) denying compensation on his claims against his employer, Tetra Pak, Inc. (Employer), and the Second Injury Fund (the Fund). *See* § 287.220 RSMo (2000).[1] The Commission found that: (1) Claimant had suffered an injury to his shoulder due to an accident at work; but (2) he failed to prove that he had a compensable injury, in that the work accident was not the prevailing factor in causing his resulting medical condition and disability. For that reason, the Commission denied benefits to Claimant. Relying on *Tillotson v. St. Joseph Medical Center*, 347 S.W.3d 511 (Mo.App.2011), Claimant argues that the Commission erred in denying compensation "because once an accident has been sustained the employer is responsible for all injuries and disabilities that flow from the accident." Because *Tillotson* is factually and legally distinguishable from the case at bar, we affirm.

---

1. Unless otherwise specified, all further references to statutes are to RSMo Cum.Supp. (2010).

## I. Factual and Procedural Background

Employer produces cardboard "juice boards" used to make milk and juice cartons. Claimant began working for Employer in April 2005. Claimant worked initially as a "stacker," and his job was to stack materials on pallets. Later, he worked as a "feeder checker." This job required him to feed cardboard into a machine for processing and then perform quality control checks.

Prior to Claimant's employment with Employer, he had worked for several employers, including Town & Country Grocery and Triangle Wire. Claimant also worked at his own business, Armstrong Tae Kwon Do, from 1995 to 2007. Claimant was the instructor, training students in martial arts, self-defense, boxing and weight training.

Claimant had several injuries before he began working for Employer. These injuries included a 1996 "ulnar nerve transposition," which required surgery to treat. In 2001, Claimant suffered a neck injury. Claimant's symptoms from the neck injury included "pins and needles" radiating down both arms and pain in the base of the neck. The treatment for his neck injury included a surgery, which consisted of a surgical fusion and implanting a "cage." In 2003, Claimant injured his left hip and underwent a total left hip replacement.

In 2006, Claimant began having pain symptoms in his neck and arms again for reasons unrelated to his work for Employer. Claimant underwent a second surgery by a different surgeon to remove the cage and repeat the fusion. After this second surgery, Claimant was given a 15–pound permanent weight restriction with regard to overhead lifting. In 2009, Claimant developed problems in his right hip and underwent a total right hip replacement.

After Claimant's second neck surgery in 2006, he resumed his employment with Employer, subject to the above-mentioned lifting restriction. He continued to work as a "feeder checker." Claimant was off work again for his total right hip replacement in 2009 and again resumed his employment with Employer in the same position.

On May 12, 2010, Claimant was at work feeding cardboard into the processing machine. He was not suffering any pain in his shoulder or any part of his right upper extremity. Claimant began working a "rush order" involving a particular stack of cardboard that was higher than normal. Claimant described the stack as being "above the head in height, above the shoulder." As he reached for the cardboard, he felt a sharp, deep pain in his right shoulder. Claimant did not report this pain right away because he thought it would go away. The pain had not gone away by the following day. Claimant reported the incident to his supervisor, who confirmed that Claimant made the report the day after the incident occurred.

Claimant was referred to Dr. Glen Cooper for evaluation and treatment. Dr. Cooper initially saw Claimant on May 14, 2010. Dr. Cooper performed an evaluation and diagnosed subacromial bursitis and mild rotator cuff tendinitis. Dr. Cooper obtained x-rays, which were reported as negative for pathology, and prescribed medication. The doctor also imposed lifting restrictions and stated that "[t]his patient had a benign onset of shoulder pain, which should have a relatively short course of treatment. His physical examination is remarkably benign."

Claimant continued to see Dr. Cooper for his right shoulder complaint. On May 19, 2010, Dr. Cooper opined that Claimant was not actually injured on May 12, 2010, but probably perceived some limitation in

his shoulder motion while performing a new task. On June 9, 2010, Claimant reported left shoulder pain, neck discomfort and right shoulder pain to Dr. Cooper. The doctor stated that the "precipitating event" was the lifting episode on May 12, 2010, which may have aggravated the bursitis and created mild tendinitis. Dr. Cooper opined that it was not really possible for this lifting incident to create clinical damage.

Claimant was discharged by Dr. Cooper on July 19, 2010 with lifting restrictions for the right arm and work above the right shoulder. Thereafter, Claimant was referred to an orthopedist, Dr. Richard Lehman. Dr. Lehman saw Claimant September 2, 2010 and took a patient history in addition to performing a clinical evaluation. X-rays revealed degenerative arthritis of the right shoulder and degenerative changes in the AC joint. Dr. Lehman believed that Claimant had a preexisting impingement and arthritis, rather than an acute injury to the right shoulder. Dr. Lehman ordered an MRI, which was done on October 4, 2010. The MRI revealed no acute tears, but revealed tendinosis, osteoarthritis and subcortical cysts, along with fraying of the glenoid labrum. Dr. Lehman opined that Claimant had severe degenerative arthritis and fraying of the rotator cuff, and that the prevailing factor for this pathology was preexisting subcortical cysts and arthritis. He stated that the MRI supported this to be a chronic, long-term and preexisting condition. Dr. Lehman stated that, "[b]ased on the MRI this appears to be chronic and long-term in nature as well as pre-existing. I do not believe his work related injury was the prevailing factor."

Claimant then consulted Dr. Dennis Straubinger for a right shoulder evaluation. Dr. Straubinger concurred with Dr. Lehman that "[Claimant's] shoulder complaints are not work related, but rather are degenerative in nature."

In October 2010, Claimant filed a claim for compensation. He sought compensation from Employer and permanent partial disability from the Fund. Claimant alleged that he suffered a right shoulder injury due to an accident that occurred on May 12, 2010. Thereafter, Claimant stopped working for Employer and resumed working at his martial arts business.

In November 2010, Claimant was sent by his attorney to see Dr. Dwight Woiteshek. After taking a history and performing a clinical evaluation, Dr. Woiteshek diagnosed Claimant as having tendinosis and osteoarthritis with impingement. Dr. Woiteshek opined that the prevailing factor in causing these medical conditions was the May 12, 2010 work incident. The doctor further opined that Claimant had not reached maximum medical improvement and required additional treatment. Dr. Woiteshek also imposed restrictions on Claimant relating to overhead work and lifting.

In March 2011, a hearing was held before an Administrative Law Judge (ALJ), who denied benefits to Claimant. The ALJ found that Claimant failed to satisfy his burden of proof on the issues of accident and medical causation, explaining:

> Based on a thorough review of the evidence including the testimony of the witnesses and the medical records, I find that the opinions of Dr. Cooper, Dr. Straubinger, and Dr. Lehman are credible and very persuasive and are more credible than the opinion of Dr. Woiteshek. I find that the alleged work accident was not the prevailing factor in causing the resulting right shoulder medical conditions and disability. I find that the employee failed to satisfy his burden of proof on the issues of accident and medical causation. I further find

that the employee did not sustain a compensable work-related accident or injury that arose out of and in the course of his employment and the employee's right shoulder condition is not medically causally related to the alleged accident.

Thereafter, Claimant filed an application for review with the Commission. The Commission unanimously affirmed the denial of benefits, but it modified the award.[2] After reviewing the statutory definitions of "accident" and "injury" in § 287.020, the Commission decided Claimant had proved that he suffered an injury to his right shoulder in an accident at work. The Commission agreed with the ALJ, however, that "the more credible evidence shows that employee's shoulder complaints are predominately degenerative in nature and not primarily due to the May 12, 2010, accident." The Commission concluded that, "since employee has not proved that his May 12, 2010, accident was the prevailing factor in causing both his medical condition or any disability, the [ALJ's] decision to deny him benefits from employer and the Second Injury Fund should be affirmed." This appeal followed.

## II. Standard of Review

On appeal, this Court reviews the Commission's decision to determine if it is supported by competent and substantial evidence upon the whole record. Mo. CONST. art. V, § 18. The scope of our review is limited:

Upon appeal no additional evidence shall be heard and, in the absence of fraud, the findings of fact made by the commission within its powers shall be conclusive and binding. The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:

(1) That the commission acted without or in excess of its powers;

(2) That the award was procured by fraud;

(3) That the facts found by the commission do not support the award;

(4) That there was not sufficient competent evidence in the record to warrant the making of the award.

§ 287.495.1 RSMo (2000). "The whole record is considered to determine if there is sufficient competent and substantial evidence to support the Commission's award." Hornbeck v. Spectra Painting, Inc., 370 S.W.3d 624, 629 (Mo. banc 2012); Hampton v. Big Boy Steel Erection, 121 S.W.3d 220, 223 (Mo. banc 2003).[3] This Court considers whether the Commission could have reasonably made its findings and reached its result, upon consideration of all the evidence before it. Hornbeck, 370 S.W.3d at 629.

This Court defers to the Commission's factual findings and recognizes that it is the Commission's function to determine credibility of witnesses and weight to be given to their testimony. Id., Birdsong v. Waste Management, 147 S.W.3d 132, 137 (Mo.App.2004). In that regard, it is important to note that conflicting medical theories present a credibility determination for the Commission to make. "[D]eciding which one of two conflicting medical theories it should accept is a determination particularly for the Commission. A determination of what weight it will accord expert testimony on matters relating to medical causation lies within the Commission's sole discretion and cannot be reviewed by this Court." Aldridge

---

2. The Commission adopted "the findings, conclusions, award and decisions of the administrative law judge to the extent that they are not inconsistent with what is set forth below."

3. Several cases, overruled by Hampton only with respect to the proper standard of review, are cited in this opinion in support of other principles of law not affected by the Hampton ruling. See Hampton, 121 S.W.3d at 224–32.

*v. Southern Missouri Gas Co.*, 131 S.W.3d 876, 882 (Mo.App.2004) (citation omitted). Therefore, the Commission's decision in this case as to which of the various medical experts to believe is binding on this Court. *See, e.g., Messex v. Sachs Elec. Co.*, 989 S.W.2d 206, 211 (Mo.App.1999); *Bruflat v. Mister Guy, Inc.*, 933 S.W.2d 829, 835 (Mo.App.1996); *Sommer v. Sommer & Hartstein*, 888 S.W.2d 398, 400 (Mo.App. 1994). "Commission decisions that are interpretations or applications of law, on the other hand, are reviewed for correctness without deference to the Commission's judgment." *Birdsong*, 147 S.W.3d at 138. We independently review questions of law. *Johnson v. Denton Construction Co.*, 911 S.W.2d 286, 287 (Mo. banc 1995).

### III. Discussion and Decision

 Claimant's single point contends that the "Commission correctly found that [Claimant] sustained an accident on May 12, 2010 but erred in finding that [Claimant's] shoulder complaints are predominantly degenerative in nature and not primarily due to the May 12, 2010 accident[.]" Claimant argues that this finding was erroneous because, once an accident has been sustained, the employer is responsible as a matter of law for all injuries and disabilities that flow from the accident. We find no merit in this argument.[4]

Claimant claims *Tillotson v. St. Joseph Medical Center*, 347 S.W.3d 511 (Mo.App. 2011), stands for the proposition that, once an accident has been sustained, the employer is responsible as a matter of law for all injuries and disabilities that flow from

the accident. Based upon that premise, Claimant argues that the Commission's analysis was incorrect as a matter of law and in conflict with *Tillotson* because "[i]n essence, the Commission reads RSMo. § 287.020.[3](1) as requiring that the accident cause both the disability and underlying medical condition." For the reasons set forth below, we do not believe *Tillotson* supports Claimant's argument.

Nurse Tillotson tore the lateral meniscus in her right knee while helping another nurse move a patient. Because of preexisting degenerative changes in Tillotson's knee due to arthritis, an arthroscopic repair of the torn meniscus would not relieve her pain. Instead, she needed and received a total knee replacement to obtain lasting pain relief. *Tillotson*, 347 S.W.3d at 513–14. The Commission determined that Tillotson suffered a compensable workplace injury, as defined by § 287.020, when she sustained the torn meniscus. *Id.* at 517. Thus, there was no issue in *Tillotson* about whether a compensable injury had occurred. *Id.* The Commission denied Tillotson's claim for medical expenses, etc., related to the total knee replacement surgery because the accident was not the prevailing factor in causing the need for that particular treatment. *Id.*

 The western district of this Court reversed the Commission's denial of Tillotson's claim for medical expenses and other benefits relating to the total knee replacement surgery. *Id.* The Court explained that the requirements of § 287.020 were satisfied because the Commission found

---

4. Claimant's point also contends that the Commission's decision was "not supported by competent and substantial evidence." Claimant waived this argument by not developing it in the argument section of his brief. *See Noland–Vance v. Vance*, 321 S.W.3d 398, 411 n. 13 (Mo.App.2010). In any event, the Commission's finding was supported by the medi-

cal opinions of Drs. Cooper, Lehman and Straubinger. "A determination of what weight it will accord expert testimony on matters relating to medical causation lies within the Commission's sole discretion and cannot be reviewed by this Court." *Aldridge v. Southern Missouri Gas Co.*, 131 S.W.3d 876, 882 (Mo.App.2004).

Tillotson had sustained a compensable injury. *Id.* The Commission erred, however, by using the "prevailing factor" requirement in § 287.020 to determine the medical treatment Tillotson was entitled to receive. *Id.* at 517–18. What the Commission should have determined, pursuant to § 287.140, is whether the total knee replacement surgery was reasonably required to cure and relieve the effects of the injury. *Id.* at 518. The upshot of *Tillotson* is this: "once it is determined that there has been a compensable accident, a claimant need only prove that the need for treatment and medication flow from the work injury." *Id.* at 519; *see Hornbeck v. Spectra Painting, Inc.,* 370 S.W.3d 624, 635 (Mo. banc 2012); *Noel v. ABB Combustion Engineering,* 383 S.W.3d 480, 484–85 (Mo.App.2012). Thus, *Tillotson* addresses the legal standard by which a claimant's entitlement to compensation for medical treatment is to be determined.

■ In contrast to *Tillotson,* the issue in the case at bar is whether Claimant sustained a compensable injury. To decide this issue, the Commission was required to use the statutory tests set out in § 287.020. In relevant part, this statute defines "accident" and "injury" as follows:

> 2. The word "accident" as used in this chapter shall mean an unexpected traumatic event or unusual strain identifiable by time and place of occurrence and producing at the time objective symptoms of an injury caused by a specific event during a single work shift. An injury is not compensable because work was a triggering or precipitating factor.
> 3. (1) In this chapter the term "injury" is hereby defined to be an injury which has arisen out of and in the course of employment. *An injury by accident is compensable only if the accident was the prevailing factor in causing both the resulting medical condition and disability.* "The prevailing factor" is defined to be the primary factor, in relation to any other factor, causing both the resulting medical condition and disability.
> (2) An injury shall be deemed to arise out of and in the course of the employment only if:
> (a) It is reasonably apparent, upon consideration of all the circumstances, that the accident is the prevailing factor in causing the injury; and
> (b) It does not come from a hazard or risk unrelated to the employment to which workers would have been equally exposed outside of and unrelated to the employment in normal nonemployment life.

§ 287.020.2–3 (emphasis added).[5] Based upon the plain language of this statute, Claimant was not entitled to compensation unless he proved that: (1) he suffered an accidental work-related injury; and (2) the accident was the prevailing factor in causing both the resulting medical condition and disability. *See, e.g., Bond v. Site Line Surveying,* 322 S.W.3d 165, 170–71 (Mo. App.2010). The Commission correctly used that legal standard in determining that Claimant did not sustain a compensable injury on May 12, 2010 because the accident was not the prevailing factor in causing both his resulting medical condition and disability. As we noted in *Jordan v. USF Holland Motor Freight, Inc.,* 383 S.W.3d 93, 95 n. 4 (Mo.App.2012), there is a material distinction between determining whether a compensable injury has occurred and determining what medical treatment is required to treat a compensable injury. *Id. Tillotson* addressed the latter, while Claimant's case involves the

---

**5.** It is clear from the record that § 287.020.3(2)(b) does not apply here.

former. *See id.* Thus, *Tillotson* does not support Claimant's argument. Claimant's point is therefore denied.

The final award of the Commission is affirmed.

DANIEL E. SCOTT, P.J., and DON E. BURRELL, C.J., concur.