

In the

*Missouri Court of Appeals*

*Western District*

| | |
|---|---|
| **PREMIUM STANDARD FARMS, INC. & TRAVELERS INDEMNITY CO.,** | **WD76756 Consolidated with WD76766** |
| **Appellant-Respondents;** | **OPINION FILED:** |
| **MARLIEA NAVIS,** | **May 20, 2014** |
| **Respondent,** | |
| **v.** | |
| **TREASURER OF THE STATE OF MISSOURI-CUSTODIAN OF THE SECOND INJURY FUND,** | |
| **Respondent-Appellant.** | |

**Appeal from the Labor and Industrial Relations Commission**

**Before Division One Joseph M. Ellis, PJ., Karen King Mitchell, Anthony Rex Gabbert, JJ.,**

Premium Standard Farms, Inc. (the "Employer") and the Second Injury Fund (the "Fund") appeal the Labor and Industrial Relations Commission's (the "Commission") decision awarding workers' compensation to Marilea Navis (the "Employee"). The Employer and the Fund each raise one point on appeal. The Employer argues that the Commission erred in holding that the Employee's work at the Employer's facilities was a substantial factor in her contracting Legionnaire's Disease because there was insufficient competent evidence on the record to support such a finding. The Fund argues that the Commission erred in finding it is liable for

permanent and total disability benefits because the Employee was permanently and totally disabled by the last accident alone. We affirm.

## Factual Background

The Employee begain working for the Employer in December 1996. She started working as a farrower and was responsible for taking care of the sows and piglets. In February 2002, the Employee was demoted to the job of power washer. This job consisted of power spraying the walls, ceilings, pens, rooms, and concrete hallways of the various barns with hot water coming from a pressure washing hose and wand. The Employee's only duties were to power wash the four barns during her eight hour shift. No power washing was done on the weekends. At the end of her shift on Friday, the Employee would put the hose and power spray nozzle away and would start again on Monday using the same hose and nozzle. The water supply used for power washing was hot water supplied by a "Hotsy" unit that came from a room located at the end of the barns near the breeding barn. The water supply to the Hotsy room came from pipes that contained water from a surface pond. This water was filtered and sodium hypochlorite added to it.

The Employee's last day of work was April 28, 2002. At that time, she complained of being fatigued and sick. The Employee was later diagnosed with Legionnaire's Disease, which is a type of pneumonia contracted by the inhalation or aspiration of water particles contaminated with Legionella bacteria. The Employee was transferred to a hospital in Des Moines, Iowa. While there, the Employee was in a coma for two weeks and spent six weeks unconscious. As a result of her pneumonia, the Employee has shortness of breath and no stamina. Since her illness, the Employee has only worked at a local restaurant washing dishes for three hours a night for

2

two or three nights a week.  The Employee, however, did not have to wash the pots and pans and the owner helped her with the lifting and allowed her to take breaks any time she needed.

The Employee brought a workers' compensation claim against the Employer and the Fund, claiming that she acquired the Legionella bacteria while working for the Employer and is now permanently and totally disabled.  On May 14, 2012, the Employee's claim was heard before an admistrative law judge (ALJ).

The Employee testified that, while performing her job, she had problems with water and mist spraying back onto her.  When she sprayed the barns, the hog manure and afterbirth would splatter on her and she would be covered by the hog waste material.  There were also puddles of leftover water that she sprayed into, as well as puddles of hog urine and manure.  The Employee also testified that she had been a heavy smoker and drinker prior to her injury but quit drinking in 2002 and quit smoking in 2011.  Additionally, the Employee denied being aware of any prior breathing problems before her illness.

Dr. Beller testified as a medical expert for the Employee.  Dr. Beller examined the Employee on July 1, 2008.  Dr. Beller found that the Employee had a pre-existing condition of chronic obstructive pulmonary disease (COPD).  He also found that the Employee had scarring in her lower lungs caused by her pneumonia.  Dr. Beller testified that the pneumonia was due to Legionella bacteria that the Employee was exposed to power washing the Employer's hog barns. He further testified that the Employee would need future medical treatment to cure and relieve her of her work-related condition.

Mary Titterington, a vocational rehabilitation counselor, also testified for the Employee. She testified that there is no expectation that the Employee could perform any job as it is

3

customarily performed in the open labor market.  She further testified that she is not a candidate for vocational training.

The Employer presented several medical experts.  One of the medical experts was Dr. David McKinsey, who did not personally examine the Employee.  After reviewing her records, he determined that the Employee had Legionnaire's Disease but concluded that she was not exposed to the Legionella bacteria while working for the Employer.  Dr. McKinsey testified that Legionella bacteria could not survive in the water that the Employee was exposed to because the water had been heated, filtered, and chlorinated.  Dr. McKinsey admitted that he had no evidence of the time, temperature, or flushing components in April 2002 when the Employee became sick.

Another medical expert for the Employer was Dr. Harold Barkman, Jr., who personally examined the Employee.  He testified that he found that the Employee had COPD as well as an old case of pneumonia.  He also testified that he was unable to establish any relationship between her employment and her pneumonia.  Furthermore, it was Dr. Barkman's belief that the Employee never had Legionnaire's Disease.

The Employer also had Brian Paulsen and Dr. Allan Schmidt testify.  Paulsen is the Employer's Director of Environment, Health, and Safety.  He testified about the facilities, including where the water came from and how it was treated.  Lastly, Dr. Allan Schmidt, a clinical psychologist, testified that the Employee had no prior psychological issues that would be a hinderance to her employment or her ability to receive employment.

The ALJ determined that the Employee was exposed to Legionella bacteria while operating a power washer for the Employer.  This exposure was the cause of her pneumonia which scarred her lungs.  The ALJ ordered the Employer to pay the Employee $63,357.43 and ordered the Fund to pay the Employee $290.25 per week commencing 200 weeks after

4

September 6, 2002, continuing weekly for the remainder of the Employee's lifetime. The ALJ also awarded the Employee future medical treatment as was reasonable and necessary. The Employer and the Fund appealed to the Commission, which affirmed the workers' compensation award but reversed the awarding of future medical treatment.[1] Both the Employer and the Fund appeal.

## Standard of Review

Section 287.495.1, RSMo 2000, provides that when reviewing a final decision of the Commission, this Court shall only review questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following reasons and no other: (1) That the Commission acted without or in excess of its powers; (2) That the award was procured by fraud; (3) That the facts found by the Commission do not support the award; and (4) That there was not sufficient competent evidence in the record to warrant the making of the award. *Spencer v. Sac Osage Elec. Co-op., Inc.*, 302 S.W.3d 792, 799 (Mo. App. 2010).

As previously mentioned, the Commission affirmed in part and reversed in part the decision of the ALJ that awarded compensation to the Employee, and in doing so adopted the ALJ's findings and conclusions. "When the Commission affirms and adopts the ALJ's award, we review the ALJ's findings as adopted by the Commission." *ABB Power T & D Co. v. Kempker*, 236 S.W.3d 43, 48 (Mo. App. 2007).

## Sufficient and Competent Evidence

In the Employer's sole point on appeal, it argues that the Commission erred in holding that the Employee's work at the Employer's facilities was a substantial factor in her contracting Legionnaire's Disease. The Employer contends that there was insufficient competent evidence in

---

[1] Because neither party appeals this part of the Commission's decision we do not address it here on appeal.

5

the record to warrant the making of such an award because the overwhelming weight of the competent evidence in the record supports a finding that the Employee's job with the Employer was not a substantial factor in her contracting the illness. We find no err.

"To be entitled to workers' compensation benefits, the employee has the burden of proving that his or her injury was caused by a work-related accident." *Spencer*, 302 S.W.3d at 800. "'Where the right to compensation depends upon which [of] two conflicting medical theories should be accepted, the issue is peculiarly for the Commission's determination.'" *Williams v. DePaul Health Ctr.*, 996 S.W.2d 619, 631 (Mo. App. 1999) (quoting *Landers v. Chrsyler Corp.*, 963 S.W.2d 275, 282 (Mo. App. 1997)).

In this case, there were conflicting medical theories about how and where the Employee was exposed to the Legionella bacteria causing her pneumonia. Dr. Beller, the Employee's medical expert, testified that the Employee was exposed to the Legionella bacteria while power washing the Employer's hog barns. The Employer's medical experts disagreed with Dr. Beller's conclusion. Dr. McKinsey testified that, while the Employee had Legionaire's Disease, she was not exposed to the Legionella bacteria while working for the Employer. Dr. McKinsey, however, was unable to determine where the Employee may have acquired the bacteria. Dr. Barkman testified that the Employee never had Legionnaire's Disease but had community acquired pneumonia.

With these conflicting medical theories, it is within the Commission's sole discretion to determine what weight it will accord expert testimony on matters relating to the cause of the Employee's exposure to Legionella bacteria. *Armstrong v. Tetra Pak, Inc.*, 391 S.W.3d 466, 470-71 (Mo. App. 2012). Here, the Commission believed and relied upon Dr. Beller's testimony and concluded that the Employee contracted Legionella while at work for the Employer.

6

Despite the Commission's sole discretion regarding expert testimony, the Employer argues that the Commission was incorrect in believing Dr. Beller's testimony and awarding the Employee compensation. In support of its argument, the Employer attacks Dr. Beller's and the Employee's testimony and argues that the Employer's expert testimony and evidence should have been believed. However, "the Commissions's decision in this case as to which of the various medical experts to believe is binding on this Court." *Id.* *See, e.g., Messex v. Sachs Elec. Co.,* 989 S.W.2d 206, 211 (Mo. App. 1999); *Bruflat v. Mister Guy, Inc.*, 933 S.W.2d 829, 835 (Mo. App. 1996). Here, the Commission believed Dr. Beller's testimony that the Employee contracted Legionella bacteria while at work for the Employer. Having believed Dr. Beller's testimony over that of the Employer's experts, we find that the Commission's decision was supported by sufficient competent evidence. Point one is denied.

## The Second Injury Fund

In the Fund's single point on appeal, it argues that the Commission erred in finding it is liable for the Employee's permanent and total disability benefits because such a finding is against the weight of the evidence. The Fund contends that the Employee was permanently and totally disabled by the work-related injury alone and not by any pre-existing disability. We find no error.

In order to impose liability on the Fund, a claimant must have had a "pre-existing permanent partial disability [that] existed at the time the work-related injury was sustained and [that] was of such seriousness as to constitute a hindrance or obstacle to employment or re-employment." *Muller v. Treasurer of Missouri*, 87 S.W.3d 36, 40 (Mo. App. 2002). "To determine whether a pre-existing partial disability constitutes a hindrance or obstacle to the employee's employment, the Commission should focus on the potential that the pre-existing

7

injury may combine with a future work related injury to result in a greater degree of disability than would have resulted if there was no such prior condition." *E.W. v. Kansas City, Missouri, School District*, 89 S.W.3d 527, 537 (Mo. App. 2002) (internal quotations omitted).[2]

Here, the Fund argues that it should not be held liable because the pre-existing condition of COPD did not affect the Employee's ability to do her job before she got sick with Legionnaire's Disease. As a result, the Employer should be responsible for the payments because the work-related injury was the reason for the Employee's permanent and total disability. We disagree.

First, there is sufficient and competent evidence supporting the Commission's decision. We note that both the Employee and her husband testified that, prior to her bout with pneumonia in 2002, she had no pulmonary symptoms or difficulties. However, Dr. Beller and Dr. Barkman testified that the Employee's COPD pre-dated her pneumonia. Furthermore, Dr. Beller testified that it was not unusual for patients to be unaware that they have COPD.

Second, the Fund focuses its argument on the lack of difficulties that the pre-existing condition caused in the past. However, the focus should be "on the potential that the condition may combine with a work-related injury in the future so as to cause a greater degree of disability than would have resulted in the absence of the condition." *Wuebbeling v. West County Drywall*, 898 S.W.2d 615, 620 (Mo. App. 1995); *see also Concepcion v. Lear Corp.*, 173 S.W.3d 368, 371 (Mo. App. 2005); *Carlson v. Plant Farm*, 952 S.W.2d 369, 373 (Mo. App. 1997). Dr. Beller, whose testimony the Commission believed, testified that the Employee was sixty percent disabled due to her respiratory disease. He testified that one-half of her disability was due to her

---

[2] We recognize that *Muller*, *Williams*, *Landers*, *Messex*, *Bruflat*, and *E.W.* cited above and *Carlson* cited below were overruled on other grounds by *Hampton v. Big-Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo. banc 2003). However, the points of law that we cite from these cases are still good law.

pre-existing COPD and the other half was due to the residual effects of the Employee's Legionnaire's Disease. Thus, the pre-existing COPD combined with the residual effects of Legionnaire's Disease caused the Employee to suffer from a greater degree of disability than would have resulted in the absence of her COPD condition. Therefore, we find that the Commission did not err in finding the Fund liable for permanent and total disability benefits. Point two is denied.

We conclude, therefore, that the Commission did not err in holding that the Employee's work at the Employer's facilities was a substantial factor in her contracting Legionnaire's Disease because there was sufficient competent evidence on the record. The Commission believed the Employee's medical expert who testified that power washing the hog barns for the Employer caused the Employee to contract Legionella bacteria. We further conclude that the Commission did not err in finding the Fund liable for permanent and total disability benefits because there was sufficient competent evidence on the record that the Employee's pre-existing COPD, combined with the residual effects of pneumonia, caused the Employee to suffer from a greater degree of disability than would have resulted in the absence of her COPD condition. We affirm the Commission's decision.

/s/ ANTHONY REX GABBERT<br>
Anthony Rex Gabbert, Judge

All concur.