

# Missouri Court of Appeals
## Southern District
### Division Two

ELEAZAR GONZALES, )
      )
    Claimant-Respondent, )
      )
vs. ) No. SD33269
      )
BUTTERBALL, L.L.C., ) Filed February 11, 2015
      )
    Employer-Appellant, )
      )
and )
      )
ACE AMERICAN INSURANCE COMPANY, )
      )
    Insurer-Appellant. )

APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS COMMISSION

AFFIRMED IN PART; REVERSED IN PART

Butterball, L.L.C., and Ace American Insurance Company (together "Appellants") appeal the Labor and Industrial Relations Commission's ("the Commission") award of workers' compensation benefits to Eleazar Gonzales for an injury to his chest occurring June 26, 2009. In four points, Appellants claim there was not sufficient, competent evidence in the record supporting the award because Gonzales failed to establish that his injury occurred at work; Gonzeles did not provide notice to his employer of any work accident; Gonzales did not miss any time from work to justify the award of temporary total disability benefits; and there was no evidence linking Gonzales's medical treatment to his alleged work injury. Because Gonzales

1

concedes that he did not miss any time from work other than part of the day of his injury and there was no evidence in the record to indicate otherwise, we reverse the award of temporary total disability benefits in the amount of $342.03. Finding no merit in Appellant's remaining three points, we affirm the balance of the Commission's award of workers' compensation benefits.

## Factual and Procedural Background

Gonzales was born in Guatemala in May 1947 and currently resides in Joplin, Missouri. He reached the third grade in Guatemala and never obtained a GED. Although Gonzales has lived in the United States for approximately twenty years and is a United States citizen, his native language is Spanish; he does not read or write English.

Gonzales began his employment with Butterball in January 2001. At the time of his injury, Gonzales was working in the evisceration department; his responsibilities included picking up and lifting both live and dead turkeys and putting them in canisters, weighing the turkeys, taking the turkeys to the grinding machines, and cleaning the line.

On June 26, 2009, while lifting a turkey weighing approximately eighty pounds, Gonzales felt a pull in his chest. Gonzales immediately notified Cacio Mario, a layman assisting Gonzales's supervisor, who took Gonzales to the infirmary. There, Gonzales was evaluated by the company nurse. Gonzales's supervisor, Mateo, was present during the evaluation and questioned Gonzales as to his injury. After someone called 911, Gonzales was taken by ambulance to McCune Brooks Hospital in Carthage, Missouri, where an interpreter was not immediately available. There, he underwent an EKG and CPK. Gonzales was subsequently transferred to Freeman Hospital in Joplin, where he underwent a cardiac catheterization, which showed Gonzales to have normal coronary arteries with normal LV function. He had not had any previous problems with his chest. Gonzales was prescribed Vicodin for pain.

The following day, Gonzales was provided with an interpreter and, at that time, Gonzales informed his treating physicians that he had been lifting a heavy turkey and attempting to place it on an upper shelf when he experienced a sudden onset of chest pain that worsened with breathing and movement of the ribs. A series of rib and chest x-rays revealed normal results, while a physical examination revealed a slightly swollen area over Gonzales's rib cage; this was determined to be secondary to lifting a heavy turkey. Gonzales was discharged from Freeman Hospital in stable condition the day following his injury with a diagnosis of non-cardiac chest pain with rib pain. The treating physician at Freeman Hospital opined that Gonzales was to remain off work for one week with no lifting more than twenty-five pounds for two weeks. Gonzales did not seek any further medical treatment upon his discharge from the hospital and returned to work full-time at Butterball without missing any scheduled days.

At the request of his attorney, Gonzales was evaluated on June 7, 2010, by Dr. Shane Bennoch. Dr. Bennoch opined that, as a result of lifting the heavy turkey on June 26, 2009, Gonzales sustained a muscle strain to his chest wall. He further opined that Gonzales had achieved maximum medical improvement for his injury and, as Gonzales's chest pain had resolved, there was no permanent disability. According to Dr. Bennoch, the treatment Gonzales received at both hospitals was reasonable and necessary to treat Gonzales's injury.

Gonzales's medical bills for treatment incurred as a result of his chest pain on June 26, 2009, total $19,655.91. Appellants have not paid any of Gonzales's medical expenses.

Gonzales filed for workers' compensation benefits as a result of his injury incurred on June 26, 2009, and a final hearing was held before an Administrative Law Judge ("ALJ") on April 2, 2013. In her final award, issued August 16, 2013, the ALJ concluded that Gonzales sustained an accident in the course and scope of his employment on June 26, 2009; the ALJ

3

expressly based her decision on "the medical records, Dr. Bennoch's testimony, and [Gonzales's] testimony[.]" Appellants were ordered to pay $19,655.91 in medical expenses and $342.03 in past temporary total disability benefits for one week of missed work. Appellants filed an appeal with the Commission, which affirmed the ALJ's decision in favor of Gonzalez and incorporated the ALJ's decision into its award. This appeal followed.

**Standard of Review**

Our review on appeal is governed by section 287.495 and *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 222 (Mo. banc 2003), which state that a

> court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:
>
> That the [C]ommission acted without or in excess of its powers;
>
> That the award was procured by fraud;
>
> That the facts found by the [C]ommission do not support the award;
>
> That there was not sufficient competent evidence in the record to warrant the making of the award.

We review the Commission's findings and award. *Clayton v. Langco Tool & Plastics, Inc.*, 221 S.W.3d 490, 491 (Mo.App. 2007). Where, as here, the Commission incorporates the ALJ's findings and award into its final award, we consider the ALJ's findings and award as the Commission's findings and award. *Id*. Moreover, the Missouri constitution, article V, section 18, provides that our review of the underlying award is limited to a determination of whether the award is "supported by competent and substantial evidence upon the whole record." Such a "standard is not met if the award is contrary to the overwhelming weight of the evidence." *Wagner v. Harbert Yeargin Constr. Co.*, 145 S.W.3d 511, 513 (Mo.App. 2004).

4

It is not our responsibility to re-weigh the evidence before the Commission; rather, we defer to the findings of the Commission as they relate to the credibility of witnesses and the weight to be given a witness's testimony. *Hornbeck v. Spectra Painting, Inc.*, 370 S.W.3d 624, 629 (Mo. banc 2012). This includes the credibility of medical experts and conflicting medical theories. *Armstrong v. Tetra Pak, Inc.*, 391 S.W.3d 466, 470-71 (Mo.App. 2012). Consequently, although we review questions of law *de novo*, we will not substitute our own judgment on issues of fact where the Commission has acted within its authority, even if this court would have reached a different conclusion. *Underwood v. High Road Indus., LLC*, 369 S.W.3d 59, 66 (Mo.App. 2012).

## Discussion

Appellants present four points relied on for our review. We address them out of order by considering the first, second, and fourth points together and then considering the third point.

### *Sufficient Evidence in Record Supporting Award*

In their first, second, and fourth points, Appellants contend that the Commission's award was against the overwhelming weight of the evidence in that the record before the Commission was devoid of any evidence demonstrating that Gonzales suffered a work-related injury, that Gonzales provided Butterball with the requisite statutory notice for any such injury, and that Gonzales's treatment for which he seeks payment was related to any alleged work-related injury. Appellants are incorrect.

A successful against-the-weight-of-the-evidence challenge will complete four steps:

1. Identify a factual proposition needed to sustain the result;

2. Marshal all record evidence supporting that proposition;

3. Marshal contrary evidence of record, subject to the factfinder's credibility determinations, explicit or implicit; and

5

4. Prove, in light of the whole record, that the step 2 evidence and its reasonable inferences are so non-probative that no reasonable mind could believe the proposition.

*Jordan v. USF Holland Motor Freight, Inc.*, 383 S.W.3d 93, 95 (Mo.App. 2012) (citing *Stewart v. Sidio*, 358 S.W.3d 524, 527-28 (Mo.App. 2012); *Houston v. Crider*, 317 S.W.3d 178, 187 (Mo.App. 2010)). Appellants completely fail to address the second step in each of these three points, ignoring any evidence in the record supporting the Commission's findings, and, in addressing the third step, ignore the Commission's credibility determinations.

Section 287.140.1 provides, in relevant part, that

[T]he employee shall receive and the employer shall provide such medical surgical, chiropractic, and hospital treatment, including nursing, custodial, ambulance and medicines as may reasonably be required after the injury or disability, to cure and relieve the effects of the work injury.

"Injury" is "defined to be an injury which has arisen out of and in the course of employment. An injury by accident is compensable only if the accident was the prevailing factor in causing both the resulting medical condition and disability." Section 287.020.3(1). An "accident" is "an unexpected traumatic event or unusual strain identifiable by time and place of occurrence and producing at the time objective symptoms of an injury caused by a specific event during a single work shift." Section 287.020.2. Finally,

(2) [a]n injury shall be deemed to arise out of and in the course of the employment only if:

(a) it is reasonably apparent, upon consideration of all the circumstances, that the accident is the prevailing factor in causing the injury; and

(b) it does not come from a hazard or risk unrelated to the employment to which workers would have been equally exposed outside of and unrelated to the employment in normal nonemployment life.

Section 287.020.3(2). In order to establish that he suffered a compensable, work-related injury, therefore, Gonzales had to prove that he suffered an unexpected traumatic event while on the job

6

that was the prevailing factor in causing the injury for which he was treated and that the hazard or risk of injury was more related to his employment than his normal non-employment life. Gonzales did just that.

Gonzales testified that at the time of his injury in June 2009, his job responsibilities included picking up both live and dead turkeys, placing them in canisters, weighing them, and taking them to a machine for grinding. He further testified that he injured his chest while lifting a turkey weighing upwards of eighty pounds and placing it on a platform, and that he had never previously experienced chest pain. The Commission expressly found Gonzales's testimony to be credible and persuasive. An employee's credible testimony can, independently, constitute substantial and competent evidence. *Hampton*, 121 S.W.3d at 223-24. Appellants omitted this favorable evidence from their argument and ignored that the Commission found Gonzales's testimony credible. The Commission's finding that Gonzales suffered a work-related injury was supported by substantial and competent evidence and was not against the overwhelming weight of the evidence. Appellants' first point is denied.

Similarly, section 287.420 provides:

No proceedings for compensation for any accident under this chapter shall be maintained unless written notice of the time, place and nature of the injury, and the name and address of the person injured, has been given to the employer no later than thirty days after the accident, unless the employer was not prejudiced by failure to receive the notice. No proceedings for compensation for any occupational disease or repetitive trauma under this chapter shall be maintained unless written notice of the time, place, and nature of the injury, and the name and address of the person injured, has been given to the employer no later than thirty days after the diagnosis of the condition unless the employee can prove the employer was not prejudiced by failure to receive the notice.

"The purpose of section 287.420 is to give the employer timely opportunity to investigate the facts surrounding the accident and, if an accident occurred, to provide the employee medical attention in order to minimize the disability." *Sell v. Ozarks Med. Ctr.*, 333 S.W.3d 498, 510

7

(Mo.App. 2011) (internal quotation omitted). "A claimant may demonstrate lack of prejudice where evidence of actual notice was uncontradicted, admitted by the employer, or accepted as true by the fact-finder." *Pursifull v. Braun Plastering & Drywall*, 233 S.W.3d 219, 223 (Mo.App. 2007) (internal quotation omitted). Thus, Gonzales needed to provide substantial and competent evidence showing either that he submitted timely written notice to Butterball informing them of his workplace injury or that Butterball was not prejudiced by his failure to do so, e.g., that Butterball had actual knowledge of Gonzales's injury.

Gonzales testified that, at the time of his injury, he immediately reported what had happened to a coworker, Cacio Mario, who was assisting Gonzales's supervisor. According to Gonzales, Mario took Gonzales to the infirmary, where the supervisor, Mateo, was present, and Gonzales then informed Mateo of what had happened. In addition, there was evidence presented that Gonzales reported his injury to Susanne Berryhill, the plant nurse, and that Butterball completed a Report of Injury, noting that Butterball was informed of Gonzales's injury on the date of the accident and that the injured body parts included Gonzales's ribs, sternum, and soft tissue. Gonzales also testified that, upon being examined by Berryhill, he was transported by ambulance to McCune Brooks Hospital in Carthage and underwent various tests and procedures to determine the cause and severity of his chest pain. As noted *supra*, the Commission expressly found Gonzales's testimony to be credible and persuasive, *see Hampton*, 121 S.W.3d at 223-24; thus, there was substantial and competent evidence before the Commission that Gonzales informed both a coworker and his supervisor of the accident immediately upon its occurrence, as well as evidence that Gonzales informed the plant nurse and that Butterball acknowledged being informed about the incident on the date of its occurrence. Furthermore, there was substantial, competent evidence before the Commission demonstrating that Butterball was able to investigate

8

the incident and provide Gonzales with adequate medical care so as to minimize any injury; in fact, it was a representative of Butterball who called for the ambulance. Appellants again failed to account for this favorable evidence and the Commission's express credibility determinations in making their argument on this point. There was substantial and competent evidence before the Commission to support the Commission's finding that Butterball had sufficient actual knowledge of Gonzales's injury on the date of its occurrence to satisfy the statute's exception to the written notice requirement. Appellants' second point is denied.

As mentioned *supra*, section 287.140 provides, in relevant part, that "[t]he employee shall receive and the employer shall provide such medical, surgical, chiropractic, and hospital treatment, including nursing, custodial, ambulance and medicines as may reasonably be required after the injury or disability, to cure and relieve the effects of the work injury." Section 287.140.1. The tests and procedures performed on Gonzales at both hospitals following his accident constituted such reasonable care.

Upon the arrival of the ambulance, the medical records provided to the Commission show that Gonzales was not provided with an interpreter. In fact, Gonzales was not provided with an interpreter until the following day. Before that point, emergency and medical personnel were informed only that Gonzales was experiencing chest pain, and the medical records note that Gonzales "is unable to speak English with a limited translation available." Consequently, Gonzales was examined and treated for a possible heart attack while awaiting the services of an appropriate interpreter, no doubt in an effort to mitigate the potentially fatal consequences of such a possible ailment. When an appropriate interpreter was secured, Gonzales related to medical personnel that he had "picked up a turkey, it was very heavy, [and he] tried to put it on the upper shelf. He had a sudden onset of chest pain which is worse with inspiration and

9

movement over the left ribs and was noted to be slightly swollen in that area." Gonzales was subsequently diagnosed with and treated for "noncardiac chest pain with rib pain," which included x-rays and a prescription for Vicodin. Although Gonzales did not actually suffer a heart attack, it is not unreasonable for emergency and medical personnel to have conducted tests to rule out such an ailment when told, without the services of an interpreter, only that Gonzales was suffering from chest pain. This was confirmed by Dr. Bennoch's testimony that such treatment was reasonable and necessary to cure and relieve the effects of Gonzales's injury, and the Commission expressly relied upon this testimony, which it found credible, in reaching its decision. Moreover, representatives of Butterball were aware of the nature of Gonzales's injury at the time he was transported to the hospital—indeed, they called for the ambulance—and had ample opportunity to assist emergency and medical personnel in determining and clarifying the cause and severity of Gonzales's injury. *See* discussion *supra*. Appellants, as before, simply chose to ignore all such favorable evidence in their argument. The Commission's order holding Appellants responsible for Gonzales's medical bills in the amount of $19,655.91 was thus supported by substantial and competent evidence and was not against the overwhelming weight of the evidence. Appellants' fourth point is denied.

### *Award of Temporary Total Disability was not Supported by Competent and Substantial Evidence in the Record*

In their third point, Appellants contend that the Commission erred in awarding temporary total disability benefits to Gonzales in the amount of $342.03 because there was not sufficient, competent evidence in the record to support it. We agree.

"Only in rare cases will we find an award by the Commission to be contrary to the overwhelming weight of the evidence." ***Roberts v. Mo. Highway & Transp. Comm'n***, 222 S.W.3d 322, 331 (Mo.App. 2007). The Commission's award of temporary total disability

10

benefits to Gonzales here presents that rare case. Although Gonzales was asked about the date of the accident and the date on which he returned to work, as well as how much time he was advised to take off before returning to work, there is no evidence in the record that Gonzales actually missed any scheduled work as a result of his chest injury. Gonzales testified that he was injured on Friday and returned to work on Monday. In his responsive brief on appeal, he concedes he did not miss any scheduled work as a result of his injury, the record does not support that he missed any work, and the award was erroneous. Because our review of the whole record reveals that there is no substantial, competent evidence in that record supporting the Commission's award of temporary total disability benefits in the amount of $342.03, Appellants' third point is granted, and that award is reversed.

## Decision

Appellants' third point is granted, and the Commission's award of temporary total disability benefits is reversed. In all other respects, the Commission's award is affirmed.


GARY W. LYNCH, J. – Opinion author

MARY W. SHEFFIELD, P.J. – concurs

DON E. BURRELL, J. – concurs

11