

# In the
## Missouri Court of Appeals
### Western District

| | | |
|---|---|---|
| **THOMAS HASSELBRING,** | ) | |
| | ) | |
| **Appellant,** | ) | |
| | ) | |
| **V.** | ) | **WD87279** |
| | ) | |
| **MACON COUNTY** | ) | **OPINION FILED:** |
| **NURSING HOME DISTRICT** | ) | **APRIL 8, 2025** |
| **AND TREASURER OF MISSOURI** | ) | |
| **AS CUSTODIAN OF** | ) | |
| **SECOND INJURY FUND,** | ) | |
| | ) | |
| **Respondents.** | ) | |

**Appeal from The Labor and Industrial Relations Commission**

Before Division Two:  Janet Sutton, Presiding Judge, Mark D. Pfeiffer, Judge and
Gary D. Witt, Judge

Thomas Hasselbring appeals the decision of the Labor and Industrial Relations

Commission ("Commission") denying his claim for worker's compensation benefits and

finding that a work-related accident, although a triggering or precipitating factor, was not

the prevailing factor in his disability.  On appeal, Hasselbring argues that the

Commission erred:  (1) in that its award was not supported by sufficient competent

evidence because uncontradicted evidence established that Hasselbring suffered a crush

injury to his left foot in which the workplace accident was the prevailing factor; (2) in

acting in excess of its powers by applying the prevailing factor test to the treatment of the

injury instead of determining that the treatment flowed from a compensable injury; (3) in acting in excess of its powers by adopting a physician's causation opinion that considered Hasselbring's negligence in its prevailing factor analysis; (4) in that its award was not supported by sufficient competent evidence because the physician's causation opinion improperly considered Hasselbring's own negligence; and (5) in that it was not supported by sufficient competent evidence because the Commission substituted its medical opinion for the expert medical testimony. We affirm the award of the Commission.

## Factual and Procedural Background

In mid-2021, Hasselbring, who worked at a nursing home, began noticing pain in his left calf when he would walk long distances. In August, 2021, after having mentioned the pain to his cardiologist, Hasselbring was sent for a CT scan. During a subsequent video consultation, a vascular surgeon ("Treating Physician")[1] told Hasselbring that he had a closed popliteal aneurysm in his leg. Because the aneurysm had completely closed off, the condition was not acute, and Hasselbring had developed some collateral blood flow to his foot. At the time of the consultation, Hasselbring did not have any sores on his feet that were failing to heal, he did not have any black toes, and he was largely able to ambulate, so while Treating Physician recommended that Hasselbring undergo vein mapping and likely vein bypass, he did not insist that Hasselbring do so immediately. Treating Physician believed that Hasselbring was scheduled for the vein mapping.

---

[1]Pursuant to section 509.520 of the Revised Statutes of Missouri as currently updated, we do not list the names of witnesses other than parties.

However, on November 3, 2021, Hasselbring was helping a nursing home resident out of a vehicle, and the resident rolled her electric wheelchair over Hasselbring's left foot. Hasselbring immediately felt a sharp pain going all the way down his left leg and into his foot. A coworker brought Hasselbring's car around for him, and he was able to drive himself home. When he got home, he was able to get himself up some stairs into his living room and take off his shoes and socks. Hasselbring called his wife ("Wife"), who was a nurse, and asked her to return from her walk to look at his foot. When she saw him, Wife "just kept saying, 'Your foot is white, your foot is white.'" Wife explained this meant his foot did not have any circulation, and Wife took him to the emergency room. As soon as the emergency doctor examined Hasselbring, he sent him to Boone Hospital by helicopter.

At Boone Hospital, Treating Physician noted that Hasselbring now had acute ischemia. He operated on Hasselbring, trying to do "everything possible to save his leg." Treating Physician attempted to "revascularize the leg, meaning get more blood supply down beyond the knee into the foot[,]" but "the tissue would not accept it." Ultimately, Hasselbring's left leg was amputated above the knee on November 5, 2021. Hasselbring has been unable to return to work, has used a wheelchair, and is learning to use a prosthesis.

Hasselbring applied for worker's compensation benefits, alleging that his injury and disability were caused by the accident that occurred in connection with his work. An administrative law judge awarded Hasselbring benefits, finding that "the accident of November 3, 2021, in which Mr. Hasselbring injured his left leg when his left foot was

3

run over by an electric wheelchair, caused him to sustain a compensable injury to his left leg."

Hasselbring's Employer, Macon County Nursing Home District, appealed the award to the Commission, which reversed the award, finding credible the opinion of Employer's retained physician ("Employer's Expert"). Employer's Expert's report stated that the "prevailing factor in [Hasselbring's] loss of limb was an occluded left large popliteal artery aneurysm." The Commission found that the November 3 wheelchair accident was "merely a triggering or precipitating factor in causing employee's medical condition and disability." This appeal follows.

## Standard of Review

This court reviews the Commission's decision to determine whether it is supported by competent and substantial evidence upon the whole record. *Armstrong v. Tetra Pak, Inc.*, 391 S.W.3d 466, 470 (Mo. App. S.D. 2012). Section 287.495.1[2]

> Upon appeal, no additional evidence shall be heard and, in the absence of fraud, the findings of fact made by the commission within its powers shall be conclusive and binding. The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:
>
> (1) That the commission acted without or in excess of its powers;
>
> (2) That the award was procured by fraud;
>
> (3) That the facts found by the commission do not support the award;
>
> (4) That there was not sufficient competent evidence in the record to warrant the making of the award.

[2] All statutory references are to the Revised Statutes of Missouri (2016), as updated by supplement.

4

We review the Commission's interpretation and application of the law *de novo*. *Steinbach v. Maxion Wheels, Sedalia, LLC*, 667 S.W.3d 188, 195 (Mo. App. W.D. 2023). When determining whether the Commission's award is supported by sufficient and competent evidence, we consider the record as a whole, viewing it objectively and not in the light most favorable to the award. *Id.* If the Commission makes findings about the weight or credibility of the evidence, however, we defer to those findings. *Id.*

**Analysis**

Hasselbring raises five points on appeal. The first is that the Commission's award denying compensation was not supported by sufficient competent evidence in that Hasselbring suffered a crush injury to his left foot in which the workplace accident was the prevailing factor.[3] Merely having an injury that was primarily caused by a workplace accident, however, does not, in itself, entitle a worker to compensation. Under section 287.020.3(1), "[a]n injury by accident is compensable only if the accident was the prevailing factor in causing both the resulting medical condition *and* disability." (emphasis added). While both Treating Physician and Employer's Expert agreed that the wheelchair accident was the prevailing factor of the "crush injury" to Hasselbring's left

---

[3] Several of Hasselbring's points on appeal, including this one, also include an assertion that the Commission's award was against the weight of the evidence. For court-tried cases, an against-the-weight-of-the-evidence challenge is not the same as a not-supported-by-substantial-evidence challenge, and thus bringing the two challenges in a single point relied on make the point "multifarious" and in violation of Rule 84.04. *Fastnacht v. Ge*, 488 S.W.3d 178, 183-84 (Mo. App. W.D. 2016). However, in cases reviewing the Commission's award, the standard is somewhat different, and an award is said to be supported by sufficient competent and substantial evidence *unless* it is "contrary to the *overwhelming* weight of the evidence." *Pace v. City of St. Joseph*, 367 S.W.3d 137, 145 (Mo. App. W.D. 2012) (emphasis added). We will review the claims under this standard.

5

foot, Employer's Expert, whose opinion the Commission found more credible, did not conclude that the crush injury was the prevailing factor in causing Hasselbring's disability. Rather, he testified that, absent Hasselbring's pre-existing popliteal aneurysm, the crush injury, or soft tissue damage, would have been "a benign event" which "would have been treated with leg elevation, ice, [and] anti-inflammatories, and not urgent thrombectomies in an attempt to get blood flow back into his foot." In other words, the soft tissue injury would not have resulted in disability. Employer's Expert's testimony, along with the medical evidence constitutes sufficient competent evidence to support the Commission's award in that the Commission's conclusion was not against the overwhelming weight of the evidence.

Point I is denied.

Hasselbring's second point on appeal is that the Commission acted in excess of its powers "in that it applied the prevailing factor test to the treatment for the foot injury, in contravention to the holding of *Tillotson* [*v. St. Joseph Med. Ctr.*, 347 S.W.3d 511, 519 (Mo. App. W.D. 2011)], when it should have determined that [Hasselbring's] treatment flowed from the initial compensable foot injury." As stated in our analysis of Point I, the Commission's award found that the soft tissue "crush injury" was not compensable in that it was not the prevailing factor in causing Hasselbring's disability. Rather, the Commission agreed with Employer's Expert that the prevailing factor in Hasselbring's disability-causing injury, which was the acute ischemia that led to the loss of his limb, was Hasselbring's pre-existing condition of popliteal aneurysm thrombosis.

6

The Commission's award acknowledged *Tillotson*, but found it distinguishable from this case.  In *Tillotson*, a worker was injured while performing her job, and the injury resulted in disability.  *Tillotson*, 347 S.W.3d at 514.  However, in *Tillotson*, the Commission erroneously applied the prevailing factor test to determine whether the workplace accident, without a pre-existing condition, was the prevailing factor in necessitating the *remedy* or treatment of a total knee replacement.  *Id.* at 517.  This Court reversed, noting that there was no challenge to the Commission's finding that the workplace was the prevailing factor in causing the worker's injury that resulted in her disability.  *Id.* at 517.  At that point, section 287.140.1 "guarantee[d] [the] injured worker the right to medical treatment reasonably necessary to cure and relieve the effects of [the] compensable injury and [did] not require a finding that [the] work place accident was the prevailing factor in causing the need for [the] particular medical treatment."  *Id.* at 517.

This case is more analogus to *Armstrong*, 391 S.W.3d at 468.  In *Armstrong*, the Commission determined that the employee was not entitled to compensation in that a workplace incident was not the prevailing factor for his pain, but rather his degenerative conditions were the prevailing factor, even though the degenerative conditions were not symptomatic at the time of the work incident.  *Id.* at 469.  The employee in *Armstrong* also cited *Tillotson* and argued that it held that "once an accident has been sustained, the employer is responsible as a matter of law for all injuries and disabilities that flow from the accident." *Id.* at 471.  The Court rejected this argument, distinguished *Tillotson*, and reiterated that section 287.020.2-3 required that compensation eligibility required that an employee prove that the employee suffered an accidental workplace injury and that the

7

accident was the prevailing factor in causing *both* the resulting medical condition and the disability. *Id.* at 472. Similarly, in *Fernandez v. Smithfield Foods, Inc.*, an employee fell at work and subsequently experienced pain and swelling from a previously asymptomatic knee. *Fernandez v. Smithfield Foods, Inc.*, 689 S.W.3d 499, 503 (Mo. App. W.D. 2024). The Commission found, and this Court affirmed, that the fall at work was merely a "triggering event or precipitating factor" for the employee's symptoms, whereas the prevailing factor for the employee's symptoms was undiagnosed but preexisting osteoarthritis. *Id.* at 513.

In this case, the Commission found, after finding Employer's Expert credible, that the prevailing factor for Hasselbring's ischemia and subsequent loss of limb was his thrombosed popliteal aneurysm, and not the wheelchair accident. While the aneurysm was not disabling prior to the accident, the accident was merely a triggering or precipitating factor, and not the prevailing factor. The loss of limb was not merely the treatment or remedy for the disability. The loss of limb was the disability; the soft tissue crush injury itself was not disabling. Therefore, the Commission did not err in distinguishing these facts from *Tillotson* and did not exceed its authority in denying benefits.

Point II is denied.

In his third point, Hasselbring alleges that the Commission exceeded its powers in adopting Employer's Expert's causation opinion because Employer's Expert considered Hasselbring's perceived negligence in forming his opinion regarding the prevailing factor. We disagree. Hasselbring cites section 287.120.1 which states that "[e]very employer

8

subject to the provisions of this chapter shall be liable, irrespective of negligence, to furnish compensation under the provisions of this chapter. . . ."  We find this provision inapposite, as it most reasonably refers to negligence increasing the risk of the workplace accident, and not the employee's decision to delay treating a preexisting medical condition.  Employer's Expert did respond to a question regarding Hasselbring's decision not to have the vein mapping and bypass procedure that Treating Physician recommended.  But this line of questioning involved Employer's Expert's explanation of why he would have been more adamant about encouraging Hasselbring to have the procedure done than was Treating Physician.  It was also to support his ultimate opinion that the severity of the underlying condition created a risk of future exacerbation, and indeed the condition was exacerbated to a disabling level following the wheelchair accident.  Employer's Expert did not deem Hasselbring's decision to delay treatment negligence; on the contrary, Employer's Expert stated,

> I'm not judging the patient.  He chose not to have something done.  That's his choice.  I wasn't in his shoes.  I wasn't the physician.  I can't make any opinion about that.  However, he asked me to not consider the fact that his circulation was severely impaired by that preexisting condition, and that had opportunity to be rectified prior to this event.  I don't see how I can[]not consider that.

There is nothing in the Commission's order that indicates that it considered Hasselbring to have been negligent in failing to have his leg treated medically prior to the work accident.  It simply found that the preexisting condition was the prevailing factor in causing his disability as opposed to the triggering workplace accident.  This is a factual

finding it was entitled to make and to which we defer because its finding is supported by substantial and competent evidence.

Point III is denied.

Point IV of Hasselbring's appeal is that the Commission's award was not supported by substantial competent evidence in that it adopted Employer's Expert's causation opinion, which incorrectly considered Hasselbring's negligence in delaying recommended treatment. This is essentially the same argument raised in Point III, but reviewed under a more deferential standard. For the reasons stated in our analysis of Point III, we find this claim to be without merit.

Point IV is denied.

Hasselbring's final point on appeal is that the Commission's award is not supported by substantial competent evidence in that it substituted its medical opinion that Hasselbring suffered from "cold foot" for the expert medical testimony that he did not suffer from that condition. We disagree. The Commission's award references "cold foot" in stating why it found Treating Physician's opinions regarding the prevailing factor to be less credible than those of Employer's Expert. The Commission acknowledges Treating Physician's opinions in regard to prevailing factor, but then points out that Treating Physician "acknowledged at the time of [the] telephone consultation employee had a 'chronic problem of lack of blood supply when he's working the muscles.'" It continues, "Additionally, his description of a 'cold foot' that he would have expected to see from the progression of blockages appears consistent with the testimony of employee and his wife, that soon after the wheelchair accident employee's wife noted his left leg and foot were

10

white and he had no circulation in his foot." This passage does not establish the Commission substituted its own medical opinion for that of the experts. Rather, it points out inconsistencies in the evidence that made the Commission find Treating Physician's opinion less credible than Employer's Expert's opinion.

We see no error here. Treating Physician did attempt to distinguish Hasselbring's injuries from those he would have expected to see in the progression of Hasselbring's preexisting condition, and the Commission fairly considered his testimony. But Hasselbring himself testified that immediately following the accident, he went home and Wife "just kept saying, 'Your foot is white, your foot is white.'" Wife explained this meant his foot did not have any circulation. When Treating Physician treated Hasselbring at the hospital, he too realized that Hasselbring's foot was not receiving adequate circulation, and he immediately performed surgery to attempt to reestablish blood supply. The evidence was consistent with the Commission's credibility determinations, and it is the Commission's prerogative to discount Treating Physician's testimony in favor of Employer's Expert's; we defer to the Commission's decision in this respect. *Randolph Cnty. v. Moore-Ransdell*, 446 S.W.3d 699, 708 (Mo. App. W.D. 2014).

Point V is denied.

11

## Conclusion

For all of the above-stated reasons, we affirm the final award of the Commission.

_____
Gary D. Witt, Judge

All concur